[Cite as *Perez Bar & Grill v. Schneider*, 2012-Ohio-5820.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| PEREZ BAR & GRILL | C.A. No.     11CA010076 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GEORGE SCHNEIDER | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.     09CA009573 |

DECISION AND JOURNAL ENTRY

Dated: December 10, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} After buying a commercial building at a sheriff's sale, George Schneider refused to allow a tenant of the building to recover personal property left inside at the time of the sale. Perez Bar & Grill L.L.C., through Josue Perez, sued Mr. Schneider for replevin and conversion of various items of restaurant and bar equipment and decorations. The trial court ruled that all but one of the contested items were trade fixtures and awarded Perez Bar & Grill $9330. This Court has modified the judgment to $9230 because the trial court incorrectly determined that the rooftop air conditioning unit is a trade fixture as opposed to a fixture that passes with the real estate.

BACKGROUND

{¶2} In 2005, Thomas Patrick owned a three-story brick building on Broadway Avenue in Lorain. Mr. Perez began renting the building without a written lease, intending to open a bar

and grill called Josh's Place. For ten months before he opened the bar, Mr. Perez worked to prepare the space on the first floor of the building. He and his father put significant work into building a large wooden bar with a substantial back bar capable of holding a large quantity of liquor. He also installed a number of coolers, freezers, sinks, refrigerators, and other restaurant equipment and furniture. He had an awning installed outside the front door and a large ventilation hood with a fire suppression system and a stainless steel backsplash installed over the stove. In May 2006, Josh's Place opened to the public. In August 2007, Mr. Perez installed a new central air conditioning unit on the roof of the building.

{¶3} Mr. Patrick lost the building to a tax foreclosure auction in September 2007. He testified that, in 2006, he told Mr. Perez that he had a tax problem but had avoided foreclosure by entering into a payment plan with the City. Later, when he fell behind on those payments, he did not tell Mr. Perez. Although Mr. Patrick knew the building was scheduled to be sold at a sheriff's sale in early September 2007, he again failed to tell Mr. Perez. Mr. Schneider bought the building at the sheriff's sale on September 5, 2007.

{¶4} Mr. Perez and Mr. Patrick both testified that, prior to the tax sale, Mr. Perez had decided to close the bar for a short time while he remodeled and made some changes to his business style. Mr. Perez testified that he had decided to stop serving food so, after he closed the bar, he began removing the kitchen equipment and attempting to sell it, mostly on Ebay. He testified that he had sold some items and had offers on others when he found that he could no longer access the building. He testified that he did not realize the ownership of the building had changed until the day he was locked out. When he contacted the new owner about getting inside the building to recover his belongings, Mr. Schneider refused to allow it. Mr. Schneider told Mr.

Perez that he had purchased everything in the building when he bought the real estate at the sheriff's sale.

{¶5} Mr. Schneider presented contrary evidence. Although he was never inside the building before he bought it, he had visited the site and had not seen anything that made him believe it housed any active businesses. He also testified that he believed Mr. Perez attended the sheriff's sale and even bid against him. Mr. Schneider further testified that he changed the locks on October 18, 2007, and the sheriff's deed reflects that the sale was finalized and the deed recorded on November 2, 2007.

{¶6} Mr. Perez's company, Perez Bar & Grill LLC, sued Mr. Schneider, alleging conversion and replevin. After Perez filed a voluntary dismissal of its replevin claim, the parties conducted a bench trial limited to the theory of conversion. The trial court ordered Mr. Schneider to pay Perez $9330 as damages for conversion of the property, ruling that: (1) 39 of the 40 contested items were trade fixtures and not fixtures, (2) none of the items had been abandoned, (3) Mr. Schneider did not acquire an interest in the items by buying the real estate, and (4) equitable estoppel did not apply. Mr. Schneider attempted to appeal the decision, but this Court ruled that we lacked jurisdiction to consider the appeal because the trial court had not certified under Rule 54(B) of the Ohio Rules of Civil Procedure that there was no just reason for delay. Although Perez had attempted to voluntarily dismiss its replevin claim against Mr. Schneider, this Court determined that attempt was ineffective in light of *Pattison v. W.W. Grainger Inc.*, 120 Ohio St. 3d 142, 2008-Ohio-5276, ¶ 18. On remand, the trial court "denied" and "dismissed" the replevin claim and reentered judgment for Perez Bar & Grill in the amount of $9330.00. Mr. Schneider has appealed.

## CONVERSION

{¶7} Mr. Schneider's first assignment of error is that the trial court incorrectly granted Perez judgment on its conversion claim. He has argued that "conversion is not the appropriate remedy" under the facts of this case because, as a "third-party stranger to a foreclosure sale," Perez "should be required to pursue a replevin action to a conclusion, or bring an action for a declaratory judgment [for] a trial court to adjudicate ownership of the property."

{¶8} In its August 25, 2011, judgment entry, the trial court determined that Mr. Schneider converted 38 items of contested property because: (1) Perez owns it and has the right to possession of it, (2) Perez demanded return of the property and Mr. Schneider refused without justification, and (3) Mr. Schneider has exercised dominion and control over the property by refusing to return it. The trial court granted Perez judgment in the amount of $9330 plus interest from June 19, 2009. According to Mr. Schneider, a conversion action would not be appropriate unless and until a defendant refuses to return the contested property after a court has determined that the plaintiff owns it. Mr. Schneider's argument focuses on the remedy. He has essentially argued that the defendant should be permitted to elect the remedy in the event that he loses the battle over ownership. Mr. Schneider has not cited any authority for this proposition.

{¶9} This Court is not aware of any authority to support Mr. Schneider's position that winning a replevin action is a condition precedent to suing for conversion. It is true that a plaintiff who wins a final judgment awarding him permanent possession of property in a replevin action, but remains unable to obtain possession of the property, may proceed as if his action were a claim for conversion. R.C. 2737.14. Although Section 2737.14 of the Ohio Revised Code mentions conversion, it does not address under what circumstances one may file a conversion claim.

{¶10} "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *State ex rel. Toma v. Corrigan*, 92 Ohio St. 3d 589, 592 (2001) (quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St. 3d 93, 96 (1990)). The three basic elements of conversion are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Keybank Nat'l Assoc. v. Guarnieri & Secrest P.L.L.*, 7th Dist. No. 07 CO 46, 2008-Ohio-6362, ¶ 15 (quoting *Haul Transport of VA Inc. v. Morgan*, 2d Dist. No. 14859, 1995 WL 328995, *3 (June 2, 1995)). "It is not necessary that the property be wrongfully obtained." *McCartney v. Universal Elec. Power Corp.*, 9th Dist. No. 21643, 2004-Ohio-959, ¶ 14. When property is otherwise lawfully held, "[a] demand and refusal . . . are usually required to prove the conversion . . . ." *Ferreri v. Goodyear Local No. 2 United Rubber, Cork, Linoleum & Plastic Workers of Am. Home Ass'n*, 9th Dist. No. 16311, 1994 WL 45740, *2 (Feb. 9, 1994) (quoting *Ohio Tel. Equip. & Sales Inc. v. Hadler Realty Co.*, 24 Ohio App. 3d 91, 94 (1985)). Thus, if the defendant lawfully obtained possession of the property, the plaintiff must offer the defendant an opportunity to restore it to plaintiff's possession before plaintiff can maintain an action in conversion. *Id.*

{¶11} There is no requirement that a plaintiff first exhaust his remedies in a replevin action before electing to sue for conversion. If the evidence is such that the elements of conversion may be proven, then such a claim may be pursued without regard to other potential remedies. Mr. Schneider's first assignment of error is overruled.

## PRESUMPTION OF OWNERSHIP

{¶12} Mr. Schneider's second assignment of error is that the trial court should have required Perez to "overcome the presumption" that he acquired an ownership interest in the contested property by virtue of buying the building at the sheriff's sale. He has argued that he purchased the building without realizing a tenant had left business equipment inside and, as an innocent third-party purchaser, Ohio law should protect him from conversion claims. He has not pointed to any authority for the proposition that such a presumption exists. He has, however, offered policy arguments, urging this Court to create such a rule to protect real estate buyers at auctions. In response, Perez has cited a Third District case for the proposition that "[p]ersonal property does not pass with the land upon judicial sale of real estate." *Hance v. Reeder*, 3d Dist. No. 1-82-13, 1983 WL 7220, *1 (Mar. 16, 1983) (citing *Standard Oil Co. v. Zangerle*, 144 Ohio St. 523 (1945)).

{¶13} Mr. Schneider has cited *Bank One, Cincinnati v. Wait*, 110 Ohio App. 3d 460 (4th Dist. 1996), for the proposition that a buyer at a sheriff's sale acquires any personal property located on the real property by virtue of its purchase. He has argued that, in *Wait*, "[t]he former owner contended" and "[t]he trial court apparently agreed" that "the purchaser had acquired both the real property and the personal property (scrap tires and the mobile home) by virtue of the judicial sale." In *Wait*, the high bidder at a sheriff's sale moved to set aside the sale because thousands of scrap tires had been left on the property creating a hazard and expense. The Fourth District did not hold that ownership of the tires passed to the purchaser at the sheriff's sale. The question was who had to pay to remove the mess. The appellate court determined that the former owner of the property had abandoned any interest in the tires and that the doctrine of caveat emptor applies to real property purchased at a foreclosure sale. *Id.* at 469-70. The Court in *Wait*

did not address the question of whether a former owner who has not abandoned his personal property retains his ownership interest in it after a judicial sale of the real estate upon which it is located.

{¶14} Mr. Schneider has argued that, prior to buying the property, he had not been inside the building and had no idea what, if any, personal property remained inside. He did not offer evidence that Perez's personal property had been included as part of the appraisal. *See Rose v. Rose*, 3d Dist. No. 10-03-08, 2004-Ohio-1954, ¶ 8 ("The reason given for excluding growing crops from judicial sales is that all lands before exposure to sale are required to be appraised, and . . . [a]nnual crops are not included in such appraisal, and hence to include them in the sale would be to give to the purchaser property which had not been subject to appraisal . . . ." (quoting *Herron v. Herron*, 47 Ohio St. 544, 548 (1890)). Under the circumstances, Mr. Schneider could not reasonably argue that the price he paid for the property included consideration for the personal and business property left inside on the day of the sale. He has essentially argued that, as the buyer of the building, he should be the beneficiary of a windfall created by an unwary tenant with an unreliable landlord. Mr. Schneider has not cited any authority supportive of that position, and we decline to adopt it.

{¶15} Further, there is no need to shield buyers at sheriff's sales from conversion suits by innocent third-party tenants. According to the settled law of conversion, if the defendant lawfully comes into possession of the chattels, such as, for example, through the purchase of a commercial building at a sheriff's sale, the plaintiff must prove two additional elements beyond a normal conversion claim in order to recover for his property. *Ferreri v. Goodyear Local No. 2 United Rubber, Cork, Linoleum & Plastic Workers of Am. Home Ass'n*, 9th Dist. No. 16311, 1994 WL 45740, *2 (Feb. 9, 1994) (quoting *Ohio Tel. Equip. & Sales Inc. v. Hadler Realty Co.*,

24 Ohio App. 3d 91, 94 (1985)).  That is, the plaintiff must prove that he requested return of his property and that the defendant denied his request without justification.  *Id.*  This additional hurdle provides sufficient protection for buyers in Mr. Schneider's position.  Mr. Schneider's second assignment of error is overruled.

FIXTURES VS. TRADE FIXTURES

**{¶16}**  Mr. Schneider's third assignment of error is that the trial court incorrectly determined that the contested items are trade fixtures that remain the personal property of Perez Bar & Grill.  "A fixture is an article [that] was a chattel, but [that] by being physically annexed or affixed to the realty, became accessory to it and part and parcel of it."  *Teaff v. Hewitt*, 1 Ohio St. 511, 527 (1853).  Classification as a fixture requires three elements:  (1) "[a]ctual annexation to the realty, or something appurtenant thereto;" (2) "[a]ppropriation to the use or purpose of that part of the realty with which it is connected;" and (3) "[t]he intention of the party making annexation, to make the article a permanent accession to the freehold . . . ."  *Id.* at 530.

**{¶17}**  Over the years, "flesh [has been] added to the bare bones of the tripartite *Teaff* test."  *Masheter v. Boehm*, 37 Ohio St. 2d 68, 73 (1974).  "The factor of physical annexation of personal property to the realty has come to be regarded as less determinative of fixture status than was formerly the case at common law."  *Id.*  In fact, the Ohio Supreme Court has described it as "the least important" of the three *Teaff* factors.  *Id.* (quoting *Holland Furnace Co. v. Trumbull Sav. & Loan Co.*, 135 Ohio St. 48, 53 (1939)).  "Thus, a chattel may be considered a fixture even though only slightly attached . . . but will not necessarily be considered a fixture because of a high degree of attachment to the realty unless the other criteria are met."  *Id.*

**{¶18}**  The Ohio Supreme Court has shifted the focus of the fixture test to the second and third prongs of the *Teaff* test in an effort to create a "proper rule of law, which provides that

degree of flexibility and accommodation to circumstances necessary to ensure that . . . [the parties] will be dealt with fairly, with neither enjoying a windfall gain nor suffering unfair deprivation." *Masheter v. Boehm*, 37 Ohio St. 2d 68, 76-77 (1974). In evaluating the purpose or use of the item under the second element of the test, courts will consider "the distinction between the business [that] is carried on . . . upon the premises, and the premises [itself]. The former is personal in nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain [their] personal character . . . . But articles [that] have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business . . . become subservient to the realty . . . ." *Zangerle v. Republic Steel Corp.*, 144 Ohio St. 529, paragraph seven of the syllabus (1945). The Supreme Court has also considered whether removal of the item would adversely affect the utility of the premises and/or necessitate replacement of the item. *Holland Furnace Co. v. Trumbull Sav. & Loan Co.*, 135 Ohio St. 48, 53 (1939). For example, because a furnace is "an integral and necessary part" of any residence in this climate and it would have to be replaced in order for someone to live in the home, the second prong of the *Teaff* test would be satisfied as to a furnace, but not necessarily as to a single-room heating stove. *Id.*

{¶19} If an item fails to meet the second prong of the *Teaff* test because it is peculiar to the business being operated on the premises, it is likely to be deemed a trade fixture. Black's Law Dictionary defines a trade fixture as "[r]emoveable personal property that a tenant attaches to leased land for business purposes," for example, a display counter. Black's Law Dictionary 669 (8th ed. 2004). Trade fixtures are an exception to the general rule regarding fixtures because they may be removed by the tenant during his lease term provided that their removal will not

result in great damage to the premises. *Donohoe v. Elliott*, 2d Dist. No. 2804, 1991 WL 233856, *3 (Nov. 8, 1991).

{¶20} Regarding the third element of the *Teaff* test, the intention of the party affixing the item to the realty is to be "inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." *Teaff v. Hewitt*, 1 Ohio St. 511, 530 (1853) (emphasis omitted). "[I]t is not necessarily the real intention of the owner of the chattel which governs. His apparent or legal intention to make it a fixture is sufficient" and that "ought to be apparent, from the situation and surroundings . . . ." *Holland Furnace Co. v. Trumbull Sav. & Loan Co.*, 135 Ohio St. 48, 53-54 (1939).

{¶21} Following a site visit, the trial court found that Mr. Perez did not intend to make any of the contested items a permanent accession to the premises. It held that "all of the property affixed to the [p]remises was (a) for [Perez's] use in the operation of the bar/restaurant at the [p]remises, (b) adapted to [Perez's] business at the [p]remises, and (c) removable with no damage to the [p]remises." It also found that, "[e]ach [contested] item . . . that is affixed to the premises is done so by nails or screws, and may be removed without causing any damage to the [p]remises."

### The bar, ventilation hood, and sinks

{¶22} The first contested item is the handmade wooden bar and backbar, which Mr. Perez described as being over 30 feet long. He testified that each section of the bar is merely screwed into the floor and removal would not cause damage to the flooring. Mr. Schneider testified that removal of the bar would cause damage because each section of the bar is "spiked" into the floor. He also testified that the back bar could not be removed without damaging the

wall. The trial court disagreed. It held that the bar and back bar could be removed without significant damage to the building and held that Mr. Perez installed them both in furtherance of his business, not as a general improvement to the building.

**{¶23}** The second contested item is the hood section of the ventilation system over the stove. Mr. Schneider testified that removal of the hood would require removal of bolts that would cause damage to both the wall and the ceiling. Mr. Perez testified that the hood is attached to metal rods that come down from the rafters and pass through the drop ceiling. He said he could remove the hood without causing any damage to the building. He also testified that he installed the hood because it was necessary to operate his business and that he never intended for it to benefit the building apart from the operation of his bar and grill.

**{¶24}** The third through sixth contested items are sinks. They were described at trial as: (1) a three-compartment stainless steel bar sink; (2) a stainless steel bar hand sink; (3) stainless steel kitchen hand sink; and (4) a stainless steel vegetable preparation double sink and table. According to Mr. Perez, both of the bar sinks are free-standing rather than affixed to the building, but they are connected to the building's water lines. Mr. Perez testified that he had to have the hand sink custom made for the small space behind the bar after he learned that the health department would require it. He testified that the hand sink in the kitchen was attached to the wall and connected to the building's plumbing system. Mr. Schneider testified that all of the sinks were fastened to the building and connected to the building's plumbing system.

**{¶25}** The bar, ventilation hood, and the sinks all meet the first requirement of the *Teaff* test for a fixture because they are attached to the building by bolts, screws and/or water lines. But, these items fail to meet the second requirement of the test. A bar and its attendant sinks are peculiar to the bar business. The kitchen sinks and ventilation hood are peculiar to the business

of food service. None of these items is "an integral and necessary part of the whole premises." *Holland Furnace Co. v. Trumbull Sav. & Loan Co.*, 135 Ohio St. 48, 53 (1939). Over the years, the building has been occupied by various types of business, including a retail store and a photography studio that would have had no use for the bar, the ventilation hood, or the kitchen and bar sinks. Because these items do not fulfill the second element of the *Teaff* test, the trial court correctly determined that they are not fixtures. The trial court correctly held that the bar, ventilation hood, and sinks are trade fixtures, because those items were installed by a tenant for purposes peculiar to its business, their removal will cause minimal damage to the building, and none of them is "an integral and necessary part of the whole premises." *Id.* To the extent that Mr. Schneider's third assignment of error addressed the bar, the ventilation hood, and the sinks, it is overruled.

### The awning

{¶26} The seventh contested item is the large vinyl awning over the front door. Mr. Perez testified that the awning is twenty-four feet by six feet and is screwed into the outside wall above the entrance. He also testified that it serves as a large sign for "Josh's Place" bar and grill. He said that the lettering is in the form of a sticker that can be easily replaced. Both Mr. Perez and Mr. Patrick testified that removal of the awning would require removal of the concrete screws holding it in place. Mr. Schneider testified that would cause damage to the face of the building.

{¶27} The awning fulfills the first element of the *Teaff* test because it is physically fastened to the face of the building. Although not of a peculiar benefit to the bar and grill business, there was no evidence that removing the awning would impair the utility of the building as a whole. Unlike a furnace or toilet, the awning is not an "integral and necessary part

of the whole premises." *Holland Furnace Co. v. Trumbull Sav. & Loan Co.*, 135 Ohio St. 48, 53 (1939). Although an awning over the front door may serve as signage and be of some practical use in this climate, its removal would not necessitate replacement. Further, Mr. Perez testified that he installed the awning for the benefit of Josh's Place rather than for the building as a whole. The awning fails the second prong of the fixture test. To the extent that Mr. Schneider's third assignment of error addressed the awning, it is overruled.

The air conditioner

**{¶28}** Mr. Schneider has also contested the trial court's determination regarding the rooftop air conditioning unit, which Mr. Perez had added just before the building was sold at auction. Mr. Patrick testified that, when he leased the building to Perez, there was an air-conditioning system in place, including the necessary ductwork. He also testified that Mr. Perez spoke with him about improving the system. Mr. Perez testified that, sometime during the month before the tax sale, he bought the air-conditioning unit and had it installed. He said the new unit used the existing ductwork and was not even fastened to the rooftop, making its removal a simple task. Mr. Schneider, on the other hand, testified that the unit is fastened to the roof and removal will cause damage.

**{¶29}** Regardless of whether the air conditioner is fastened to the roof, it is sufficiently attached to the building, via the HVAC system, to fulfill the first element of the *Teaff* test. Strictly speaking, central air conditioning is not necessary for the use of a commercial building in northern Ohio, but it is an integral part of the entire three-story building. *See Holland Furnace Co. v. Trumbull Sav. & Loan Co.*, 135 Ohio St. 48, 53 (1939). Therefore, it meets the second requirement of the *Teaff* test.

{¶30} Mr. Patrick and Mr. Perez testified that Mr. Perez had hoped to buy the building eventually. In fact, they had agreed on a price and had a written land contract, but it had never been executed due to a lack of financing. Mr. Patrick said that, although Mr. Perez generally told him about his plans for additions or alterations to the property, he never placed any limits on Mr. Perez's freedom to alter the building. He also testified that he never had any discussion with his tenant about any of the contested items becoming a permanent part of the building. The air conditioner was described as a 200 pound, five-ton capacity rooftop unit, which Mr. Perez connected to the pre-existing HVAC system. The nature and use of the central air conditioning unit tend toward an inference of permanency. That is, as part of the central air conditioning system for the three-story building, it is an integral part of the whole premises and not adapted to benefit only the area of the building occupied by the bar and grill. Therefore, the trial court incorrectly determined that the air conditioning unit was a trade fixture instead of a fixture. To the extent that Mr. Schneider's third assignment of error addressed the air conditioner, it is sustained.

## ABANDONMENT

{¶31} Mr. Schneider's fifth assignment of error is that the trial court's decision that none of the contested items was abandoned is against the manifest weight of the evidence. When reviewing the manifest weight of the evidence in a civil case, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012–Ohio–2179, ¶ 20 (quoting *Tewarson v. Simon*, 141 Ohio App. 3d 103, 115 (9th Dist. 2001)).

{¶32} Abandoned property has been defined as "property over which the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession or enjoyment." *Doughman v. Long*, 42 Ohio App. 3d 17, 21 (12th Dist. 1987). "Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. Mere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon." *Long v. Noah's Lost Ark Inc.*, 158 Ohio App. 3d 206, 2004-Ohio-4155, ¶ 35 (7th Dist.) (quoting *Davis v. Suggs*, 10 Ohio App. 3d 50, 52 (12th Dist. 1983)).

{¶33} Mr. Schneider has argued that the trial court's decision fails to account for the evidence that tended to indicate that Mr. Perez had closed the bar and grill two to three months before the sheriff's sale. He has pointed out that there was evidence that some utilities were turned off in September and Mr. Schneider testified that when he visited the property before the sale, he found it locked and dark. The trial court also heard evidence that Perez had not abandoned the property. Mr. Patrick testified that, while the bar was still operating, Mr. Perez told him that "he was going to close for two or three months to do some remodeling and change some things." Mr. Perez said that, once he closed the bar, he "started stripping the kitchen, selling off the pieces . . . [to] gather money to reopen." According to Mr. Perez, he had located Ebay buyers ready to purchase the stove and the ventilation hood, but the deals fell through when Mr. Schneider locked him out of the building. He also testified that he had bought a mechanical bull intended for use in the remodeled bar, but had not had it delivered to the building before the locks were changed.

{¶34} Despite the contrary evidence, the trial court believed Mr. Perez's testimony regarding his intention to temporarily close the business in order to remodel and open a bar

without food service. The trial court found that, "[w]hen [Mr. Schneider] purchased the [building], [Perez's] renovation was underway." Based on Mr. Perez's testimony, the trial court determined that he "had solicited offers for the various items . . . and had obtained offers to purchase [some of them]." The trial court did not lose its way and create a manifest miscarriage of justice by believing Mr. Perez's testimony that he had not abandoned the property inside the building. Mr. Schneider's fifth assignment of error is overruled.

## VALUE OF THE DISPUTED PROPERTY

{¶35} Mr. Schneider's fifth assignment of error is that the trial court's decision regarding the value of the disputed property is against the manifest weight of the evidence. The Ohio Supreme Court has held that, "[i]n a suit for conversion, [if] the facts do not authorize the assessment of exemplary damages, the general rule for the measure of damages is the value of the property at the time of the conversion." *Erie R.R. Co. v. Steinberg*, 94 Ohio St. 189, paragraph two of the syllabus (1916); *but see Schaffer v. First Merit Bank N.A.*, 9th Dist. Nos. 09CA009530, 09CA009531, 2009-Ohio-6146, ¶ 29 (explaining that this Court and others have "deviated from [this] bright-line rule" in favor of making the plaintiff whole.) This Court has described the general measure of damages as focusing on the market value of the converted items. *Digital & Analog Design Corp. v. N. Supply Co.*, 9th Dist. No. 4213, 1987 WL 25779, *4 (Nov. 25, 1987), rev'd in part on other grounds, 44 Ohio St. 3d 36 (1989) (citing *Fulks v. Fulks*, 95 Ohio App. 515, 519 (1953)). "[F]air market value" is defined as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction . . . ." Black's Law Dictionary 1587 (8th ed. 2004).

{¶36} Mr. Schneider has argued that the trial court misconstrued his expert's testimony and relied on values that do not represent the fair market value of the contested items. He has

argued that the trial court incorrectly relied on his expert's testimony regarding the "retail value[s]" of the items, which do not account for the cost of a dealer preparing the items for resale. Mr. Schneider called Lawrence Treboniak, a dealer of used restaurant equipment, to testify about the value of the contested items. Mr. Treboniak testified that the retail value was the price at which he believed his company could sell each item after it had been retrieved, cleaned, and repaired if necessary. According to Mr. Schneider, the only evidence of fair market value at the time of conversion came from Mr. Treboniak's testimony regarding the price he would be willing to pay for each item, which was just 20 percent of the retail value.

{¶37} Mr. Schneider's argument fails because it is dependent on the assumption that a used equipment dealer is necessary to accomplish the sale of used restaurant equipment. There was no evidence to that effect. On the contrary, Mr. Perez testified that he had been successfully working to sell the equipment directly to buyers online. Thus, the trial court reasonably relied on the dealer's testimony regarding the retail value as evidence of the fair market value of the items. The trial court did not create a manifest miscarriage of justice by relying on Mr. Treboniak's opinion regarding the price an end user would pay for the used restaurant and bar equipment. Mr. Schneider's fifth assignment of error is overruled.

### CONCLUSION

{¶38} Mr. Schneider's first assignment of error is overruled because a plaintiff is not required to pursue a replevin action before electing to sue for conversion. His second assignment of error is overruled because the settled law of conversion provides sufficient protection for buyers in Mr. Schneider's position. His third assignment of error is sustained only in so far as it addressed the trial court's decision that the rooftop air conditioning unit was a trade fixture. The remainder of Mr. Schneider's third assignment of error is overruled. His fourth assignment of

error is overruled because the trial court did not lose its way and create a manifest miscarriage of justice by concluding that Mr. Perez did not abandon the disputed items. His fifth assignment of error is overruled because the trial court did not lose its way and create a manifest miscarriage of justice by relying on evidence of the retail value of the trade fixtures as the measure of damages. The judgment of the Lorain County Common Pleas Court is vacated to the extent that it held the rooftop air conditioning unit is a compensable trade fixture rather than a fixture that passes with the real estate. As the trial court determined the fair market value of the air conditioning unit to be $100, the trial court's judgment in favor of Perez Bar & Grill must be reduced by $100. The judgment is accordingly modified to reflect an award of $9230.00 to Perez Bar & Grill. The judgment is affirmed in all other respects.

Judgment affirmed as modified.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

MOORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

BRENT L. ENGLISH, Attorney at Law, for Appellant.

JEFFREY H. WEIR, II, Attorney at Law, for Appellee.