[Cite as *State v. Fleming*, 2017-Ohio-871.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

JASON FLEMING

    and

JERRY L. FLEMING

    Appellants

C.A. Nos.    15CA010792
                15CA010793


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    13CR088279
                13CR088280

DECISION AND JOURNAL ENTRY

Dated: March 13, 2017

CARR, Presiding Judge.

{¶1} Appellants Jason Fleming and Jerry Fleming appeal their convictions in the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} Jason and Jerry were each indicted on one count of breaking and entering and one count of possessing criminal tools, both felonies of the fifth degree. After pleading not guilty, both men waived their rights to a jury trial and elected to be tried by a judge. The Flemings were tried together after the court obtained their waivers of any potential conflict due to their representation by attorneys who practiced in the same office. At the conclusion of the bench trial, the judge found both Jason and Jerry guilty of both counts. Jason was sentenced to two

years of community control, while Jerry was sentenced to one year of community control. Both

men filed timely appeals, each raising one identical assignment of error.

II.

**ASSIGNMENT OF ERROR**

[APPELLANTS'] CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

**{¶3}** Jason and Jerry submitted substantially identical briefs and raise identical

arguments. They argue that their convictions are against the manifest weight of the evidence.

This Court disagrees.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

**{¶4}** This discretionary power should be exercised only in exceptional cases where the

evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*,

78 Ohio St.3d at 387.

**{¶5}** This Court will not overturn the trial court's verdict on a manifest weight of the

evidence challenge only because the trier of fact chose to believe certain witness' testimony over

the testimony of others. *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22.

{¶6} Jason and Jerry were each convicted of breaking and entering in violation of R.C. 2911.13(A), which provides that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, * * * or any felony."

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

R.C. 2901.22(A).

{¶7} The Flemings were each also convicted of possessing criminal tools in violation of R.C. 2923.24(A), which states that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶8} As an initial matter, this Court notes that the Flemings do not present any arguments in their briefs regarding their convictions for possessing criminal tools. Rather, they challenge only their convictions for breaking and entering, arguing merely that the State failed to meet its burden of persuasion as to whether the Flemings used stealth to enter the structure and whether the defendants had purpose to commit a theft offense because the property was abandoned. Accordingly, we constrain our discussion to these issues.

{¶9} Recognizing that the Ohio Revised Code does not define "stealth," this Court has adopted the well-established definition of "'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'" *State v. Trikilis*, 9th Dist. Medina Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, ¶ 31, quoting *State v. Lane*, 50 Ohio App.2d 41, 47 (10th Dist.1976); *see also State v. Dobbins*, 9th Dist. Lorain No. 08CA009498, 2009-Ohio-2079, ¶ 27 (Carr, J., dissenting, also citing Black's Law Dictionary (8 Ed.2004) 1453, defining "stealth" and "surreptitiousness; furtive slyness").

{¶10} This Court has defined "abandoned property" as "property over which the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession or enjoyment." *Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 11CA010076, 2012-Ohio-5820, ¶ 32, quoting *Doughman v. Long*, 42 Ohio App.3d 17, 21 (12th Dist.1987). Moreover, "'[a]bandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. Mere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon.'" *Perez Bar & Grill* at ¶ 32, quoting *Long v. Noah's Lost Ark, Inc.*, 158 Ohio App.3d 206, 2004-Ohio-4155, ¶ 35 (7th Dist.). The State cannot establish a theft if the property was abandoned or the accused reasonably believed that it was abandoned. *Hamilton v. Noe*, 12th Dist. Butler No. CA2008-08-182, 2009-Ohio-2802, ¶ 9.

{¶11} The following evidence was adduced at trial. In late October 2013, the Fleming brothers were doing some work on a house Jason had purchased on West 17th Street, in Lorain. After finishing, they noticed a nearby house with missing windows at 907 West 17th Street. Jerry had on another occasion noticed a large sign in the yard indicating that the house was condemned and scheduled to be demolished, but the sign was not in the yard on that particular

day. After leaving the area for a while, the Flemings returned to 907 after dark. They backed their truck up the driveway to the side of the house. With no lights on the property, the truck was not readily visible. Jason and Jerry brought a large bag of construction tools and a sledgehammer with them and entered the house through one of the front windows.

{¶12} After being dispatched to the property regarding a possible breaking and entering, two police officers arrived at the property. They heard movement and saw flashlights being used inside the house. The officers announced themselves. One of the Fleming brothers stated that they were coming out and did not want any trouble. The brothers exited the house through a front window. Immediately upon exiting, Jerry blurted out that he knew they should not be there and that they were just taking scrap metal. After receiving a *Miranda* warning, Jason admitted that he did not know who owned the property and that he and his brother were there taking anything of value.

{¶13} Jason Davis became the owner of the property in the early 2000s and had used it as a rental property for a number of years. The house had not been rented for approximately a year in October 2013, because it had been subjected to vandalism. Mr. Davis had hoped to rehabilitate the property and replace the stolen copper and mechanicals, but he had been unable to afford the extensive repairs. However, he yet believed in October 2013, that the house could be refurbished. Although the house has since been demolished, Mr. Davis still owns the property and receives property tax bills for it.

{¶14} Mr. Davis did not know the Flemings and never gave them permission to be on or in the property. He was adamant that, even if there was a sign on the property warning of danger and indicating that the house had been condemned (which he denied), he still owned the house and all its contents. In fact, he and his maintenance worker periodically drove by the property to

check on it. Mr. Davis did not give the Flemings permission to remove anything from the house he owned. Nevertheless, the police found some items from the house in the Flemings' truck.

{¶15} Although there was no yard sign on the property that evening indicating that the house was scheduled for demolition, Jerry believed that the city owned the property, was planning to tear it down, and would take all materials to the dump. He admitted, however, that he never contacted the city to seek permission to enter the house and take any scrap metals. He further admitted that he did not know the property owner and never sought permission from anyone to enter. Moreover, he admitted that he does not believe that anyone can enter a property and take whatever he pleases simply because signage identifies a house as condemned property. Nevertheless, he and his brother entered the house after dark via a window, choosing the "path of least resistance," knowing that they were trespassing. Both men admitted that they entered the house with the purpose of taking anything of value they could find.

{¶16} A thorough review of the record indicates that this is not the exceptional case where the evidence weighs heavily in favor of the Fleming brothers. The weight of the evidence supports the conclusion that Jason and Jerry Fleming used stealth to trespass in the unoccupied house at 907 West 17th Street, in Lorain, for the purpose of stealing anything of value therein. The brothers noticed the vacant house with missing windows, left, and waited until after dark to return. They parked their truck along the side of the unlit house, obscured from clear view, rather than in front of the house which would have given them easier access for loading contents from the house. They brought construction tools and a sledgehammer with them and entered the house through a glassless window, rather than taking the time to push open the front door and check for a clear path. The reasonable inference is that the brothers chose the quickest and easiest means of entrance and egress to avoid detection. They used the limited, directed light of

flashlights to search for anything of value, rather than a more expansive light source. Under these circumstances, the evidence demonstrated that the Flemings used stealth to gain access to and remain in the house, making efforts to avoid detection.

{¶17} The weight of the evidence further supports the conclusion that neither the house nor its contents had been abandoned. Mr. Davis owned the property and had not made any affirmative acts tending to show that he had relinquished all right, title, claim, and possession of the property. In fact, the evidence demonstrated his intention to resume enjoyment of the house as a renovated rental property. Both he and his maintenance worker checked on the property approximately once a month. He had hoped to refurbish the house even in October 2013. It was only later that he realized that the extensive necessary repairs would be cost prohibitive. In addition, even though the house was eventually demolished, there was no evidence that Mr. Davis would not have first removed anything of value once he was notified of any impending demolition. Mr. Davis continued to own the property even after the house had been demolished, and continues to receive tax bills. Moreover, the Flemings admitted that they knew that they were trespassing on the property, that they were not supposed to be there, and that they had not sought permission to take any of the contents of the house. In fact, they entered the house under cover of darkness to avoid detection by any rightful owner. Under these circumstances, the evidence demonstrated that Mr. Davis had not abandoned either the house or its contents. In addition, the evidence demonstrated that the Flemings did not reasonably believe that the property had been abandoned.

{¶18} Accordingly, Jason Fleming's and Jerry Fleming's convictions for breaking and entering are not against the manifest weight of the evidence. The identical and sole assignment of error of each is overruled.

III.

{¶19}  Jason Fleming's assignment of error is overruled.  Jerry Fleming's assignment of error is overruled.  Their convictions in the Lorain County Court of Common Pleas are affirmed.

Judgments affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
CANNON, J.
CONCUR.

(Cannon, J., of the Eleventh District Court of Appeals, sitting by assignment.)

APPEARANCES:

GIOVANNA V. SCALETTA-BREMKE, Attorney at Law, for Appellants.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.