[Cite as *Boaeuf v. Memphis Station, L.L.C.*, 2018-Ohio-745.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105799**

---

# ERNEST BOAEUF, ET AL.

### PLAINTIFFS-APPELLEES

vs.

# MEMPHIS STATION, L.L.C.

### DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-841995

**BEFORE:** Stewart, J., E.A. Gallagher, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 1, 2018

**ATTORNEY FOR APPELLANT**

Charles W. Zepp
Seeley, Savidge, Ebert & Gourash Co., L.P.A.
26600 Detroit Avenue, 3rd Floor
Cleveland, OH 44145


**ATTORNEYS FOR APPELLEES**

Gerry Davidson
William S. Creighton
Jeffrey J. Fanger
Fanger & Associates, L.L.C.
36 Alpha Park
Highland Hts., OH 44143

Nicholas Weiss
100 North Main Street, Suite 300
Chagrin Falls, OH 44022

John F. McIntyre
3200 West Market Street, Suite 106
Akron, OH 44333

MELODY J. STEWART, J.:

**{¶1}** Plaintiff-appellee Ernest Boaeuf, through his corporation Memphis March 2014, L.L.C., and defendant-appellant Memphis Station, L.L.C., entered into an asset purchase agreement for the sale of a bar and grill, and liquor permit. Boaeuf began operating the tavern, but made only one full payment and one partial payment on a cognovit note that he issued to Memphis Station. Memphis Station obtained a cognovit judgment and then sold all of the assets included in the asset purchase agreement, including the liquor permit, to another buyer. Boaeuf brought this action against Memphis Station, raising several claims, only one of which survived trial — a conversion claim relating to the sale of the bar assets to a third party. The magistrate who conducted the trial found that Memphis Station's sale of the bar assets to another buyer was an unauthorized act of dominion over assets belonging to Boaeuf. The magistrate ordered damages of $25,000 for the liquor permit, $30,000 for the bar assets, $20,000 in punitive damages, and attorney fees in the stipulated amount of $24,000. The court approved and adopted the magistrate's decision over objections by Memphis Station.

**{¶2}** On appeal, Memphis Station argues that the court erred by rejecting its claim that Boaeuf's abandonment of the premises was a defense to the conversion claim, that the court's valuation of the business assets was against the manifest weight of the evidence, and that the court erred by awarding punitive damages and attorney fees.

## I. Abandonment

{¶3} Memphis Station argues that the evidence showed that Boaeuf abandoned the premises before it sold the bar assets to another party, thus defeating the conversion claim.

{¶4} "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990).

{¶5} This case is an example of the common law maxim nemo dat quod non habet (also known as the nemo dat rule): "No one in general can sell personal property and convey a valid title to it unless he is the owner or lawfully represents the owner." *Mitchell v. Hawley*, 83 U.S. 544, 550, 21 L.Ed. 322 (1872). When Memphis Station sold the bar assets to Boaeuf, it gave up any right or title to those assets; they belonged to Boaeuf. By selling bar assets that it no longer held title to, Memphis Station converted Boaeuf's assets.

{¶6} Memphis Station does not dispute these legal principles, but argues that Boaeuf had closed the bar and permanently abandoned the bar assets. Indeed, abandonment of property — where the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession, or enjoyment — is an affirmative defense to conversion. *McCain v. Brewer*, 2d Dist. Darke No. 2014-CA-8, 2015-Ohio-198, ¶ 17. Memphis Station supports its abandonment argument by citing Boaeuf's testimony that the bar business was "not the

kind of business that I wanted to be in" and that "in my mind the deal was over" and "so we walked away."

{¶7} Memphis Station does not give full context to Boaeuf's testimony. The evidence showed that Boaeuf had been managing the bar because it "didn't have a liquor license, and we didn't have a lease." The evidence showed that the Ohio Department of Liquor Control cancelled the application to have the liquor permit transferred to Boaeuf. And as he managed the business while waiting for the transfer of the liquor permit, Boaeuf discovered that some of the bar customers were drug dealing from the bar. When he barred those people from the premises, "the business just evaporated." These two factors — the liquor permit and the clientele — are what caused Boaeuf to "walk away" from operating the bar.

{¶8} The law makes it clear that "[m]ere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon." *Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 11CA010076, 2012-Ohio-5820, ¶ 32. Boaeuf's trial testimony that he decided to "walk away" from the bar business did not necessarily mean that he had abandoned the bar assets. Indeed, he testified that despite closing the bar, he intended to sell the bar assets to pay off the outstanding balance on the cognovit note. And we note that Boaeuf's statement about walking away from the bar business was made at trial; Memphis Station offered no evidence to show that it confirmed Boaeuf's intentions prior to selling the bar assets to the third party. This was an important omission because Memphis Station had already received a

cognovit judgment for the contract price of the bar assets. We conclude that the court relied on competent, credible evidence to find that Memphis Station wrongly equated Boaeuf's non-use of the bar assets as abandoning those assets. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

## II. Value of Assets

{¶9} Memphis Station next complains that the court's valuation of the bar assets at $30,000 was against the manifest weight of the evidence. It claims the only evidence for this valuation came from a Boaeuf witness who conceded that he was not a professional appraiser and who offered a "guesstimate" of value if the assets were sold at auction. They believe that the court should have found that the assets were worth only $13,545 based on the subsequent sale of the liquor permit and bar assets to a third party for $39,000, less the $25,000 stipulated value of the liquor permit.

{¶10} Although Memphis Station calls into question the bona fides of Boaeuf's appraiser, it does not claim that the court erred by allowing the appraiser to offer a valuation. In fact, the appraiser testified that he operated an auction house that would buy, consign, or auction restaurant equipment. He testified that he had been approached by the third-party buyer and asked for his opinion on the value of the bar assets. As a courtesy to her, the appraiser gave an auction estimate for the equipment that the buyer used in her negotiations with Memphis Station.

{¶11} It is true that the buyer managed, after "back and forth" negotiations, to persuade Memphis Station to agree to sell the bar assets for less than their appraised

value.  Normally, the price agreed to in an arms-length transaction for the sale of property is considered the best evidence of the property's value.  *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 33.  That rule, however, is not absolute.  The buyer testified she negotiated the price by telling Memphis Station that "you happen to have all this equipment that has now fallen into your lap."  To be sure, the buyer did not know at the time that Boaeuf still held title to the bar assets.  Nevertheless, she testified that she got "a very good deal" on the purchase price and that she paid "way under market" for the bar assets.  The court could rationally have concluded that Memphis Station sold the bar assets below their true market value, so its decision to reject the sale price and assign a higher value to the bar assets was supported by competent, credible evidence.

### III. Punitive Damages and Attorney Fees

{¶12} The court adopted the magistrate's decision to award punitive damages on evidence that Memphis Station, while not acting with hatred or ill will, nonetheless showed a conscious disregard of Boaeuf's rights and acted with a great probability of causing substantial harm.  These findings also caused the magistrate to award attorney fees.  Memphis Station argues that the court failed to recognize mitigating circumstances; namely, that Boaeuf "walked away" from the bar.

{¶13} "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a

great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 334, 512 N.E.2d 1174 (1987), syllabus. "An award of punitive damages based on conscious disregard malice requires 'a positive element of conscious wrongdoing[.]'" *Malone v. Courtyard by Marriot Ltd. Partnership*, 74 Ohio St.3d 440, 446, 659 N.E.2d 1242 (1996), citing *Preston*, 32 Ohio St.3d at 335. This is a requirement that the party "possess knowledge of the harm that might be caused by his behavior." *Preston, supra*.

{¶14} The facts supporting the conversion claim are competent, credible evidence that Memphis Station sold the bar assets with a conscious disregard for Boaeuf's rights and that its actions had a great probability of causing substantial harm. There was no question that Memphis Station sold the bar assets to a third party despite having received a judgment on the cognovit note. And negotiations with the third party occurred despite Boaeuf having a pending replevin action for the bar assets. That a replevin action was pending before the sale to the third party had been completed was persuasive evidence that Memphis Station did not act under the mistaken belief that Boaeuf abandoned the bar assets. Indeed, the magistrate found that Memphis Station "engaged in self-help as there are no U.C.C. statements, security agreements, or other documents authorizing [Memphis Station] to sell the assets owned by [Boaeuf] to another party." Boaeuf intended to sell the bar assets to offset the cognovit judgment. By selling the bar assets to a third party, Memphis Station not only caused substantial financial harm to Boaeuf, it enriched itself beyond the amount it received in the cognovit judgment.

{¶15} With an award of punitive damages justified, the court did not err by adopting the magistrate's decision to award attorney fees. Attorney fees are proper when the court has awarded punitive damages. *Pyle v. Pyle*, 11 Ohio App.3d 31, 35, 463 N.E.2d 98 (8th Dist.1983). Memphis Station does not make any argument that attorney fees were unwarranted apart from its argument that punitive damages were unjustified. If punitive damages were justified, so too, were attorney fees.

{¶16} Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR