DOUGHMAN, APPELLANT, *v.* LONG, D.B.A. CORKY'S MARATHON SERVICE ET AL., APPELLEES.

18

(Nos. CA87-06-070 and CA87-06-083 — Decided October 26, 1987.)

*Thomas T. Cole,* for appellant.

*William L. Bowen,* for appellee Robert Long.

*Lee C. Falke,* prosecuting attorney, and *Sharon L. Ovington,* for appellees Thomas Wilson, D.L. Berkte and William T. Von Blon.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Deborah Piperni O'Neill,* for Jack Walsh, Ron Lewis and B.W. Phillips.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Butler County.

This is an appeal by plaintiff-appellant, Walter A. Doughman, from a judgment of the Court of Common Pleas of Butler County which granted defendants-appellees, Robert Long, d.b.a. Corky's Marathon Service, and others, summary judgment on appellant's second amended complaint.

On December 19, 1983, appellant's 1982 Chevrolet pickup truck was stolen in Montgomery County. Appellant discovered the pickup's theft that day and reported it to the Montgomery County Sheriff's Department (hereinafter "MCSD") which sent Deputy D.L. Bertke to make a theft report. After a report was taken, MCSD Detective William L. Von Blon took charge of the investigation.

Two weeks after its disappearance, *i.e.,* on January 2, 1984, the pickup was located by Ohio State Highway Trooper B.W. Phillips. Phillips found the pickup as a result of a citizen's complaint to the Warren County Sheriff's Department of an abandoned motor vehicle. The highway patrol contacted appellee Long (hereinafter "Long"), a tow truck operator, and instructed him to tow the stolen pickup to his place of business. Phillips then advised the MCSD of the recovery of appellant's pickup.

On January 3, 1984, after determining the pickup was appellant's, Von Blon unsuccessfully attempted to call appellant to inform him of its recovery. Having been unsuccessful, Von Blon dispatched Deputy Yorgen to personally contact appellant and inform him that his pickup had been found and could be reclaimed. While he also failed to find appellant at home, Yorgen said he left his business card at appellant's door along with instructions that appellant should contact the MCSD.

Appellant claims he never received this card and he did not learn that his pickup had been relocated until Long informed him of its recovery on February 19, 1986. On that date, appellant admits he received a letter by certified

mail from Long's attorney informing him that Long had the pickup and would have it declared an abandoned vehicle and a new title issued if it were not reclaimed within fifteen days. Appellant further states that when he attempted to reclaim his pickup from Long, he was advised it would not be returned until he paid $3,700 in towing and storage charges. Appellant refused to pay those charges.

Claiming negligence on the part of Long and the law enforcement agencies and officers (who knew of the recovery of his pickup put failed to inform him of that fact) and that the defendants' failure to return the pickup upon demand constituted conversion, appellant, on May 28, 1986, filed his original complaint herein seeking damages and/or replevin.

In response, Long filed an answer in which he admitted obtaining and retaining possession of appellant's pickup following its recovery but denied appellant's other allegations. Along with his answer, Long filed a counterclaim against appellant in which he sought either $3,700 for towing and storage or a judgment transferring the title of appellant's pickup into his name. He also filed a similar $3,700 cross-claim against his co-defendants arising out of his towing and storage of the stolen pickup.

A series of motions followed. In response to these motions the common pleas court, *inter alia,* dismissed Long's cross-claim against his co-defendants,[1] dismissed appellant's claim insofar as it alleged the MCSD was negligent in failing to inform him that his pickup had been recovered, but allowed the complaint to stand insofar as it alleged the MCSD converted the pickup. The court then granted appel-

lant leave to file a second amended complaint.

In his second amended complaint appellant alleged, *inter alia,* that each and every defendant had failed to notify him of his pickup's recovery and that this omission occurred "with malicious purpose, in bad faith and in a reckless and wanton manner." Moreover, appellant alleged, each defendant had willfully, wantonly and maliciously refused to return his pickup.

Following the filing of his second amended complaint, appellant, as well as Long, the MCSD, and the Ohio State Highway Patrol filed motions for summary judgment. On May 11, 1987, the common pleas court filed a decision and judgment granting the motions of Montgomery County Sheriff Tom Wilson, Bertke and Von Blon for summary judgment. Similarly, on May 19, 1987, the court granted Long's motion for summary judgment on his counterclaim for $3,700 and overruled appellant's summary judgment motion against Long on the latter's counterclaim. Finally, on July 1, 1987, the common pleas court granted the highway patrol's motion for summary judgment.

Appellant filed separate appeals from the common pleas court's judgment in favor of the MCSD and its judgment in favor of Long on his $3,700 counterclaim and against appellant on that same counterclaim. These appeals have been combined for consideration and disposition.

In his brief before this court, appellant lists two assignments of error which state:

"FIRST ASSIGNMENT OF ERROR:

"The trial court erred to the prejudice of Appellant in granting the MCSD defendant's Motion for Summary Judgment.

"SECOND ASSIGNMENT OF ERROR:

---

[1] Long did not appeal the dismissal of his cross-claim.

"The trial court erred to the prejudice of Appellant in granting Long's Motion for Summary Judgment."

For his first assignment of error, appellant claims the trial court erred in granting summary judgment to the MCSD. We disagree.

In his second amended complaint appellant alleged the Montgomery County Sheriff and two of his subordinates maliciously, recklessly, and wantonly failed to notify him of his pickup's recovery and willfully, wantonly, and maliciously refused and continue to refuse to return his pickup to him in spite of his demands for its return. Neither of these claims is supported by the evidentiary materials in the record.

The only relevant evidentiary materials properly before the court below on the subject of the MCSD's efforts to notify appellant were the affidavits of Von Blon and Yorgen. Von Blon's affidavit stated he made a number of unsuccessful telephone calls to appellant to inform him of his pickup's recovery on and after January 2, 1984. Von Blon further swore that, on January 3, 1984 (after he apparently failed to reach appellant by phone), he instructed Yorgen to personally contact appellant and inform him of his vehicle's recovery. Yorgen's affidavit relates his unsuccessful attempt to contact appellant at his home which ended with Yorgen's leaving a business card on appellant's door advising him to contact the MCSD concerning the recovery of his pickup.

Although not referred to by either party, Ohio has statutes defining a law enforcement agency's obligation to return stolen property to its true owner. R.C. 2933.41(B)[2] provides:

"A law enforcement agency that has property in its possession that is required to be disposed of pursuant to this section shall make a reasonable effort to locate the persons entitled to possession of the property in its custody, to notify them of when and where it may be claimed, and to return the property to them at the earliest possible time. * * *"

R.C. 2933.41(B) imposes a duty on law enforcement agencies that recover stolen property to make a reasonable effort to locate and notify the owner of the property's recovery. Based on the affidavits before us, we conclude the trial court properly concluded there was no genuine issue of fact as to whether the MCSD made a reasonable effort to locate and notify appellant of the recovery of his pickup. Since the only relevant materials before it on the motion of MCSD for summary judgment show that MCSD made a reasonable effort to locate and notify appellant of his pickup's recovery, it could only conclude MCSD complied with its statutory duty and was thus entitled to summary judgment.

Turning to appellant's claims that the MCSD converted his pickup following its recovery, we find similar uncontroverted evidence in the record. Von Blon's affidavit stated he never had possession of appellant's pickup and issued no instructions which would have delayed its return to appellant. Attendantly, Long's affidavit filed in support of his motion for summary judgment indicates he took control of appellant's pickup shortly after its recovery and has held it ever since. Stated simply, when appellant demanded that the MCSD return his pickup, that department did not have the pickup, it did not have constructive possession, *i.e.*, control over the

---

[2] A somewhat similar provision relating to a municipal police department's obligation with respect to the return of stolen property is found in R.C. 737.29 *et seq.*

pickup, and it did not have any basis (such as an evidence hold) for objecting to its return to him. The supporting materials in this case show Long had appellant's pickup and he acted alone in refusing to return it to appellant. Since the MCSD did not fail to return appellant's pickup upon his demand for it, the trial court properly entered judgment in its favor.

Accordingly, appellant's first assignment of error has no merit and is overruled.

For his second assignment of error, appellant claims the trial court erred in awarding Long summary judgment on his counterclaim for towing and storage. We agree.

The trial court held, *inter alia,* appellant's pickup was an abandoned vehicle and Long had no duty to inform appellant of his possession of it because R.C. 4513.60 *et seq.,* which relate to abandoned vehicles, impose this duty on a local law enforcement agency. Relying on R.C. 4513.61 the court below further concluded the General Assembly created a lien or security interest in favor of an automobile towing and storage business against the owner of an abandoned vehicle. We find the trial court's reliance on R.C. 4513.60 *et seq.* is misplaced because appellant's pickup was a stolen vehicle long before it was found abandoned. Consequently, it was never abandoned *by appellant.*

R.C. 4513.60 through 4513.63 relate to abandoned vehicles. However, none of these sections defines an "abandoned" vehicle. If all stolen vehicles were also considered abandoned vehicles, our job would be quickly ended. But this is not the law. Because no statutory definition is provided us, we must apply the common, everyday meaning of the term "abandoned" in determining what it means. See *State, ex rel. Celebrezze,* v. *Allen*

*Cty. Bd. of Commrs.* (1987), 32 Ohio St. 3d 24, 27, 512 N.E. 2d 332, 334.

According to Black's Law Dictionary (5 Ed. 1979) 2, "abandon" means:

"To desert, surrender, forsake, or cede. To relinquish or give up with intent of never again resuming one's right or interest. To give up or cease to use. To give up absolutely; * * *."

Abandoned property then is property over which the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession or enjoyment. *Jackson* v. *Steinberg* (1949), 186 Ore. 129, 205 P. 2d 562.

The General Assembly enacted R.C. 4513.60 through 4513.63 in order to provide law enforcement agencies with a procedure for dealing with vehicles which are abandoned on public or private property. These statutes allow police to tow and store such vehicles until they are reclaimed. Much like an implied consent statute for intoxicated automobile operators, these statutes are based upon the premise of "implied consent." An owner who leaves his vehicle on public or private property for the statutorily specified time period is deemed by the statute to have presumptively abandoned his vehicle and thereby impliedly consented to its removal by a local police agency. *Motors Ins. Co.* v. *Bougher* (Dec. 16, 1981), Medina App. No. 1077, unreported. These statutes therefore serve the salutary purpose of clearing the streets of real and potential traffic hazards as well as derelict vehicles.

In the case *sub judice,* however, the record contains no evidence indicating appellant abandoned his vehicle. Instead, the facts demonstrate the pickup's thief abandoned it in January 1984 and that appellant was helpless to stop him. Because this case involves the theft and subsequent abandonment of a stolen vehicle by its thief, and is

not one wherein the vehicle's owner or a person operating it with the owner's consent is involved, we conclude R.C. 4513.60 through 4513.63 do not apply. *Motors Ins. Co., supra.* This is simply not a case where it is fair to suggest appellant abandoned his pickup and thereby impliedly consented to its towing and storage until he chose to reclaim it. Nor is this a case where appellant was responsible for creating a nuisance on the highway. Because R.C. 4513.60 through 4513.63 do not apply, Long had no statutory lien arising therefrom. Because there is no common-law lien in favor of a garage operator for towing and storage charges, *Candler* v. *Ash* (1976), 53 Ohio App. 2d 134, 7 O.O. 3d 96, 372 N.E. 2d 617, and appellant's affidavit does not provide the necessary averments to qualify him as a warehouseman, who might have a warehouseman's lien under R.C. 1304.14, see *Consolidated Freightways Corp.* v. *Smith* (Feb. 2, 1983), Madison App. No. 763, unreported, we find the trial court erred in finding a lien existed and in granting Long judgment against appellant for $3,700 based upon it.[3] Instead, we adopt the syllabus in *Gulf Ins. Group* v. *Trester* (1970), 22 Ohio App. 2d 172, 51 O.O. 2d 317, 259 N.E. 2d 509, which provides.

"A garage owner who, upon request or direction of a deputy sheriff, removes a stolen vehicle found abandoned on a public road to his place of business and keeps it in storage does not have a claim against the owner of, or a lien upon, such vehicle for storage and towage charges where the owner is not notified of the recovery of the vehicle or its whereabouts."

Notwithstanding our conclusion

that the trial court erred in relying on R.C. 4513.60 *et seq.* to award Long a judgment against appellant, we believe Long should not be denied some recovery, for his services were not performed gratuitously or officiously. The question is rather what form that recovery should take.

In this case Phillips, who found the pickup, was not appellant's agent and did not have authority from appellant to order his pickup into storage. *Consolidated Freighways Corp., supra.* Since Long dealt only with this trooper in taking possession of the pickup, no consensual relationship between Long and appellant existed. *Gulf Ins. Group, supra.* Thus, any obligation owed Long by appellant arose out of some form of contract but not a contract based on mutual assent.

Based on the facts before us, we conclude the appropriate basis on which to afford Long relief against appellant is grounded on an implied contract, *Clements* v. *Ratliff* (M.C. 1986), 29 Ohio Misc. 2d 49, 29 OBR 497, 505 N.E. 2d 666, more specifically, *quantum meruit*, which is Latin for "as much as he deserves." *Joseph I. Tripodi Co., L.P.A.* v. *Dunn* (1985), 27 Ohio App. 3d 26, 27 OBR 27, 499 N.E. 2d 355. The record before us establishes Long did not tow and store appellant's pickup gratuitously or officiously but in response to a legitimate public safety concern. In *Wendover Rd. Property Owners Assn.* v. *Kornicks* (1985), 28 Ohio App. 3d 101, 28 OBR 198, 502 N.E. 2d 226, paragraph two of the syllabus, the Court of Appeals for Cuyahoga County held:

"Generally, one who officiously confers a benefit upon another is not entitled to restitution therefor.

---

[3] We also believe it follows from this finding that Long was not entitled to retain appellant's pickup once he received a letter by certified mail from appellant's attorney demanding its return and that his continued possession of the pickup in spite of that demand for its return constituted conversion.

However, *where it is imperatively necessary for the protection of the interest of third persons or of the public* that a duty owed by another should be performed, a stranger who performs it may be entitled to restitution from the other, even though his performance was without the other's knowledge or against his will. * * *" (Emphasis added in part.)

We believe that notwithstanding the fact that appellant did not agree to pay for Long's services before they were rendered, to the extent those services conferred a benefit on appellant Long is entitled to their reasonable value. Since the trial court has not yet passed upon this question we will only briefly set forth the nature of Long's entitlement.

First, we conclude Long is entitled to the reasonable value of his towing charge because appellant was benefited by the pickup's removal from a location where it might be subjected to vandalism or possibly a second theft. Second, we conclude Long is entitled to a reasonable storage fee. However, a fee based on the storing of this pickup for over two years is manifestly unreasonable in duration. It is important to remember here that while Long silently stored appellant's pickup (and thereby entitled himself to ever mounting storage charges), appellant was both unnecessarily denied its use and robbed of its value due to depreciation.

In *Motors Ins. Co., supra,* the Court of Appeals for Medina County reached a reasonable compromise by following the syllabus in *Gulf Ins. Group, supra.* It held that a tow truck operator who stores a recovered stolen vehicle *with the knowledge of its owner* (an insurance company) is entitled to the reasonable value of his storage charges for the period in which he stored the recovered vehicle while its owner knew of its location. See *Burns*

*Motor Co.* v. *Briggs* (1928), 27 Ohio App. 80, 160 N.E. 728.

The notice requirement in *Burns, supra,* and *Gulf Ins. Group, supra,* is both simple and sensible. We believe this rule, as it applies to cases such as this, simply states — if a storage lot operator wishes to charge an automobile owner for storing his stolen automobile after it is recovered from the thief and placed in his possession without the owner's knowledge or consent, the storage lot operator is obligated to inform the vehicle's owner of his possession of the recovered vehicle and the charges its continued storage will generate. By allowing his stolen but recovered vehicle to remain in storage after receiving notice of its recovery and current location, the vehicle's owner agrees to accept that arrangement. However, until such notice is given to the owner no storage charges may be recovered on a *quantum meruit* theory. To hold otherwise allows a storage facility operator to benefit by his own inaction, which is particularly inappropriate where the vehicle being stored was stolen from its owner and he is unaware of its location for whatever reason. Were we to permit silence to constitute acquiescence on the part of a recovered vehicle's owner, we would thereby perpetuate a dubious process on the part of facility operators wherein the title to an automobile, whose value will generally depreciate with time, can easily be acquired after a relatively short period of time, *i.e.,* less than the normal useful life of the automobile, because the storage charges against it greatly exceed its fair market value. See *Clements, supra.* This we will not do.

In summary, we overrule appellant's first assignment of error, but we find appellant's second assignment of error has merit and sustain it. We hold that the trial court erred in entering

24

judgment for Long for $3,700 on his counterclaim. We reverse the judgment of the Court of Common Pleas of Butler County insofar as it entered judgment for Long for $3,700 against appellant and remand this case for further proceedings on appellant's second amended complaint and Long's counterclaim.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed in part and reversed in part and remanded for further proceedings not inconsistent with this decision.

*Judgment affirmed in part and reversed in part.*

Jones, P.J., Hendrickson and Koehler, JJ., concur.