NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0399n.06
Case No. 15-3119

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DENNIE HENRY, BRIAN BAKER, and IRA HARDY, | ) ) ) | **FILED** Jul 15, 2016 DEBORAH S. HUNT, Clerk |
| Plaintiffs–Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| CITY OF MIDDLETOWN, OHIO, | ) ) ) | COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendant–Appellee. | ) ) | |

**BEFORE: DAUGHTREY, COOK, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiffs appeal the district court's grant of summary judgment to Defendant City of Middletown in this § 1983 action alleging that the City deprived Plaintiffs of their vehicles without due process pursuant to a custom or policy of using an inapplicable state statute that when applied under these circumstances fails to provide due process. We reverse and remand for further proceedings.

Middletown police arrested Plaintiffs in separate, unrelated incidents and impounded their vehicles. The City notified each Plaintiff that he had ten days to claim his vehicle by presenting proof of ownership and paying towing and storage costs. Although Plaintiffs contacted the City regarding claiming their vehicles, they did not pay towing and storage costs within ten days. While Plaintiffs' criminal cases were still pending, the City permanently deprived Plaintiffs of their vehicles, selling two of the vehicles after transferring title to itself, and transferring title of the third vehicle to a towing company.

Plaintiffs' complaint alleged under *Monell*[1] that the City's custom and policy of disposing of impounded vehicles under color of the inapplicable abandoned-vehicle statute, Ohio Rev. Code Ann. § 4513.61, without providing a post-impoundment hearing before a neutral decision-maker, is contrary to Ohio law and offends the federal Due Process Clause. Plaintiff Henry also brought a private-takings claim. Concluding that § 4513.61 applied and provided sufficient process, the district court granted summary judgment to the City. We disagree and reverse.

## I. Plaintiffs' Arrests and the City's Disposal of Their Vehicles

### A. Dennie Henry

Middletown police arrested Henry outside his home on July 20, 2011, after a witness to a drive-by shooting identified Henry as the shooter. Henry was walking next to his immediate neighbor's house when police arrived. Police later reported that they found a rifle under Henry's neighbor's bushes, that they observed shell casings in plain view in the front seat of Henry's Dodge Neon, which was parked in his driveway, and that Henry was intoxicated. PID 70-72. Police impounded the Neon; the ticket states the reason for impoundment was Henry's arrest. PID 79. After the Neon was impounded and towed to Mark's Towing, "the shell casings were recovered and tagged into property." The rifle the police found under the neighbor's bush was also tagged into property. PID 71-72. By certified letter dated July 27, 2011, the City notified Henry that he could make arrangements to recover his vehicle by calling the Middletown police and by presenting title to the vehicle. The letter stated, "This order is in compliance with O.R.C. Section 4513.61 R.C. and Section 4513.62, which states motor vehicles will be sold after 10 days if no action is instituted, by you or your agency, to reclaim it." PID 78. Enclosed with the certified letter were the impound ticket and claim copy. PID 78-79. On or about August 23,

---

[1] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

2011, about one month after the Neon was impounded and towed to Mark's Towing, police completed an Unclaimed and Abandoned Junk Motor Vehicle affidavit. PID 68, 75.

At Henry's request, his friend Ken Brewer[2] contacted Middletown police on August 29, 2011. PID 85-86 (Brewer affidavit). Brewer, who owned a used-car lot and body shop, averred that Middletown police told him that Henry's vehicle was at Mark's Towing, and that he immediately called Mark's Towing and asked for the impound bill in order to get Henry's Neon out of impound. Brewer's affidavit does not state what the Mark's Towing representative said to him. When Brewer called Mark's Towing again on September 7, 2011, he was told the Neon had been sold at auction and not to call back. Brewer later sold Henry a vehicle and, while helping Henry with the title work, learned that contrary to what Mark's Towing had told him, Mark's Towing in fact obtained title to Henry's Neon on September 15 or 16, 2011, and then sold it. PID 85. Brewer averred that he knew that Henry kept personal items in his Neon, including a safety deposit box key, $50.00 cash in the glove box, clothes, and other keys, and that none of these items were returned to Henry. Brewer also averred that, based on his experience, Henry's Neon had a value of $7,500.00 because of its low mileage, tinted windows, and immaculate condition. PID 86. Henry averred that he had fully paid off the Neon. PID 124.

## B. Brian Baker

On November 1, 2011, Middletown police observed what appeared to be a drug transaction involving a Chevrolet Astro van in the parking lot of Miller's Lounge, after which they stopped the van for muffler and license-plate violations. Baker was driving the van and was arrested for possessing Vicodin (one pill in his pocket) and for tampering with evidence based on

---

[2] Henry was hospitalized due to a heart attack immediately after his incarceration, thus he did not receive the City's notice. But there is no dispute that Henry was aware that the City planned to dispose of his vehicle and that Brewer contacted the City for Henry.

another Vicodin pill found in his mouth. Baker's van was impounded and towed to Mark's Towing. The City notified Baker of the impoundment.

Baker averred that he used his van for his painting business and stored equipment and paint in the van. PID 128. When Baker called the police to claim his van, Officer Birk told him he would not get his van back even if he beat the case. PID 161. Birk then told Baker that if he wanted the van back he would have to pay towing and storage fees, to which Baker responded that he could not afford those fees and that he was innocent of the charges. The grand jury did not indict Baker, likely because he had a prescription for Vicodin, and the charges were dismissed. PID 3, 161. Baker averred that on the very day the grand jury declined to indict, he learned that his van had been auctioned. PID 128. The City in fact had obtained a salvage title to Baker's van on January 19, 2012, and sold it for $626.00 in February 2012. PID 52, 59, 161-62.

### C. Ira Hardy

Middletown police arrested Hardy on March 27, 2012, following a traffic stop for a headlight violation and, after learning that Hardy was a suspect in a home-invasion robbery, they had Hardy's Ford Taurus impounded and towed to Mark's Towing. The City notified Hardy of the impoundment by letter dated March 30, 2012, and Hardy contacted his arresting officer, Officer Stephen Winters, to reclaim his vehicle. Winters told Hardy not to worry about the impoundment notice and that he could get his vehicle back by cooperating against a co-defendant. Hardy in fact cooperated, pleaded guilty to reduced charges, and was sentenced to probation in April 2013. In the spring and summer of 2012, Hardy went to the impound lot with Officer Winters, only to find that his vehicle was not there. Sometime later, Officer Birk contacted Hardy and told him his vehicle had been sold at auction on June 6, 2012. PID 125-26,

62.  In fact, the City had obtained title to Hardy's vehicle several months before, on April 11, 2012.  PID 162.

## II.

We review de novo the district court's grant of summary judgment.  *Thom v. Am. Standard, Inc.*, 666 F.3d 968, 972 (6th Cir. 2012) (citing *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006)).  All evidence and inferences therefrom must be viewed in the light most favorable to the non-moving party.  *Tysinger v. Zanesville Police Dep't*, 463 F.3d 569, 572 (6th Cir. 2006) (citing Fed. R. Civ. P. 56(c)).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.

### A.

At times pertinent to this action, Ohio Rev. Code Ann. § 4513.61 provided[3]:

**Impounding abandoned motor vehicle; notice to owner; disposition of vehicle**

The sheriff of a county or chief of police of a municipal corporation, township, or township or joint police district, within the sheriff's or chief's respective territorial jurisdiction, or a state highway patrol trooper, upon notification to the sheriff or chief of police of such action and of the location of the place of storage, may order into storage any motor vehicle, including an abandoned junk motor vehicle as defined in section 4513.63 of the Revised Code, that has come into the possession of the sheriff, chief of police, or state highway patrol trooper as a result of the performance of the sheriff's, chief's, or trooper's duties or that has been left on a public street or other property open to the public for purposes of vehicular travel, or upon or within the right-of-way of any road or highway, for forty-eight hours or longer without notification to the sheriff or chief of police of the reasons for leaving the motor vehicle in such place, except that when such a motor vehicle constitutes an obstruction to traffic it may be ordered into storage immediately.  The sheriff or chief of police shall designate the place of storage of any motor vehicle so ordered removed.

---

[3]  This version of the statute was in effect from June 29, 2011 to March 22, 2015.

The sheriff or chief of police immediately shall cause a search to be made of the records of the bureau of motor vehicles to ascertain the owner and any lienholder of a motor vehicle ordered into storage by the sheriff or chief of police, or by a state highway patrol trooper, and, if known, shall send or cause to be sent notice to the owner or lienholder at the owner's or lienholder's last known address by certified mail with return receipt requested, that the motor vehicle will be declared a nuisance and disposed of if not claimed within ten days of the date of mailing of the notice. The owner or lienholder of the motor vehicle may reclaim it upon payment of any expenses or charges incurred in its removal and storage, and presentation of proof of ownership, which may be evidenced by a certificate of title or memorandum certificate of title to the motor vehicle. If the owner or lienholder of the motor vehicle reclaims it after a search of the records of the bureau has been conducted and after notice has been sent to the owner or lienholder as described in this section, and the search was conducted by the owner of the place of storage or the owner's employee, and the notice was sent to the motor vehicle owner by the owner of the place of storage or the owner's employee, the owner or lienholder shall pay to the place of storage a processing fee of twenty-five dollars in addition to any expenses or charges incurred in the removal and storage of the vehicle.

If the owner or lienholder makes no claim to the motor vehicle within ten days of the date of mailing of the notice, and if the vehicle is to be disposed of at public auction as provided in section 4513.62 of the Revised Code, the sheriff or chief of police, without charge to any party, shall file with the clerk of courts of the county in which the place of storage is located an affidavit showing compliance with the requirements of this section. Upon presentation of the affidavit, the clerk, without charge, shall issue a salvage certificate of title, free and clear of all liens and encumbrances, to the sheriff or chief of police. If the vehicle is to be disposed of to a motor vehicle salvage dealer or other facility as provided in section 4513.62 of the Revised Code, the sheriff or chief of police shall execute in triplicate an affidavit, as prescribed by the registrar of motor vehicles, describing the motor vehicle and the manner in which it was disposed of, and that all requirements of this section have been complied with. The sheriff or chief of police shall retain the original of the affidavit for the sheriff's or chief's records, and shall furnish two copies to the motor vehicle salvage dealer or other facility. Upon presentation of a copy of the affidavit by the motor vehicle salvage dealer, the clerk of courts, within thirty days of the presentation, shall issue to such owner a salvage certificate of title, free and clear of all liens and encumbrances.

Ohio Rev. Code Ann. § 4513.61 (West 2011).

Plaintiffs assert that the Ohio courts have confined application of § 4513.61 to cases involving actual abandonment, and that because police seized their vehicles upon their arrest, the

City was obliged to comply with § 2981.11(A)(1) concerning the safekeeping of property in police custody, and return the vehicles when its reasons for holding them ended.[4]

Section 2981.11 provides in pertinent part:

Safekeeping of property in custody

(A)(1) Any property that has been lost, abandoned, stolen, seized pursuant to a search warrant, or otherwise lawfully seized or forfeited and that is in the custody of a law enforcement agency shall be kept safely by the agency, pending the time it no longer is needed as evidence or for another lawful purpose, and shall be disposed of pursuant to sections 2981.12 and 2981.13 of the Revised Code.

   (2) This chapter does not apply to the custody and disposal of any of the following:

       (a)  Vehicles subject to forfeiture under Title XLV of the Revised Code, except as provided in division (A)(6) of section 2981.12 of the Revised Code;
       (b)  Abandoned junk motor vehicles or other property of negligible value

. . . .
(C) A law enforcement agency with custody of property to be disposed of under section 2981.12 or 2981.13 of the Revised Code shall make a reasonable effort to locate persons entitled to possession of the property, to notify them of when and where it may be claimed, and to return the property to them at the earliest possible time. In the absence of evidence identifying persons entitled to possession, it is sufficient notice to advertise in a newspaper of general circulation in the county and to briefly describe the nature of the property in custody and inviting persons to view and establish their right to it.

Ohio Rev. Code Ann. § 2981.11.

---

[4] Plaintiffs also argued that § 4513.61 makes abandonment a fact of consequence to their vehicle titles and that a post-impoundment hearing before a neutral decisionmaker is necessary to permit them to show they did not abandon their vehicles. Plaintiffs maintained that if the factfinder agreed that they did not abandon their vehicles, the City's duty under § 2981.11(a)(1) would be triggered and the vehicles would have to be returned to them. *See* PID 111-13 (Plaintiffs' Response to Mo. for Summ. J.); Reply Br. 7. The district court interpreted Plaintiffs' argument as asserting that the City violated §§ 2981.11 and 2981.12, and concluded that violation of state statutes cannot give rise to a federal claim. PID 167-68 ("[t]o the extent that Plaintiffs contend that the City should have proceeded under §§ 2981.11 and 2981.12 to safeguard and dispose of their cars, rather than § 4513.61, they have failed to allege constitutional due process violations.")

The district court agreed with the City that the statutory language in the first paragraph, providing that police may order into storage "any motor vehicle . . . that has come into the possession [of police] as a result of the performance of [police] duties," authorized police to impound Plaintiffs' vehicles and declare them a nuisance when Plaintiffs did not pay towing and storage costs within ten days of the mailing of the City's notice.

**B.**

The language relied on by the district court and the City was added to § 4513.61 in 1997, and expanded the police authority of the chief, sheriff or state trooper to tow and store abandoned junk motor vehicles and other vehicles coming into their possession as a result of the performance of their duties without notice to the vehicle owners. Although the clause in question relied on speaks in broad language, the statute must be read in the context of the entire statutory scheme of laws relating to police authority over property that comes into police possession.

In addition to § 4513.61 and § 2981.11, a host of other Ohio statutes concern property that comes into police possession in the performance of their duties, including statutes governing vehicles or vehicle parts with altered VIN numbers, Ohio Rev. Code Ann. §§ 4549.61–4549.63, statutes governing vehicles driven by persons under the influence, *see e.g.*, Ohio Rev. Code Ann. § 4511.195, statutes governing vehicles driven by persons with suspended licenses, *see e.g.*, Ohio Rev. Code Ann. § 4511.203, statutes governing stolen property, Ohio Rev. Code Ann. §§ 505.105–505.109, property used in connection with certain offenses that is subject to forfeiture, *see e.g.*, Ohio Rev. Code Ann. §§ 2981.12–2981.13, and property recovered by the police, Ohio Rev. Code Ann. § 737.29. In this context, there is no reason to believe that the added clause at issue was intended to displace other statutory provisions specifically addressing

the handling of vehicles that come into police possession. Instead, given the history of the various statutes, a more reasonable interpretation is that § 4513.61 was expanded to include other situations similar to the ones already mentioned in that section.

Section 4513.61's broad language referring to "any motor vehicle . . . that has come into the possession [of police] as a result of the performance of [police] duties," is no more applicable than § 2981.11's language referring to "[a]ny property that has been lost, abandoned, stolen, seized pursuant to a search warrant, or otherwise *lawfully seized* or forfeited and that is in the custody of a law enforcement agency." Nor do the exceptions in § 2981.11(A)(2) apply. Title XLV entitled Motor Vehicles—Aeronautics—Watercraft, has several forfeiture provisions, but § 4513.61, the statute at issue, is not one of them. And, the City does not argue that the vehicles were "[a]bandoned junk motor vehicles or other property of negligible value." Thus, § 2981.11 demands compliance with § 2981.12, titled "Disposition of unclaimed or forfeited property":

> (A) Unclaimed or forfeited property in the custody of a law enforcement agency, other than property described in division (A)(2) of section 2981.11 of the Revised Code, shall be disposed of by order of any court of record that has territorial jurisdiction over the political subdivision that employs the law enforcement agency, as follows:
> . . . .
>> (6)(a) Any mobile instrumentality forfeited under this chapter may be given to the law enforcement agency that initially seized the mobile instrumentality for use in performing its duties, if the agency wants the mobile instrumentality. The agency shall take the mobile instrumentality subject to any security interest or lien on the mobile instrumentality.
>>
>> (b) Vehicles and vehicle parts forfeited under sections 4549.61 to 4549.63 of the Revised Code may be given to a law enforcement agency for use in performing its duties. Those parts may be incorporated into any other official vehicle. Parts that do not bear vehicle identification numbers or derivatives of them may be sold or disposed of as provided by rules of the director of public safety. Parts from which a vehicle identification number or derivative of it has been removed, defaced, covered, altered, or destroyed and that are not suitable for police work or incorporation into an official vehicle shall be destroyed and sold as junk or scrap.
>> . . . .

> (B)  Unclaimed or forfeited property that is not described in division (A) of this section or division (A)(2) of section 2981.11 of the Revised Code, with court approval, may be used by the law enforcement agency in possession of it.  If it is not used by the agency, it may be sold without appraisal at a public auction to the highest bidder for cash or disposed of in another manner that the court considers proper.

Ohio Rev. Code Ann. § 2981.12.

Neither subsection (A)(6)(a) or (b) of § 2981.12 applies here.  The term "instrumentality" in subsection (A)(6)(a) is defined in § 2981.01 as "property otherwise lawful to possess that is used in or intended to be used in an offense."  Ohio Rev. Code Ann. § 2981.01.  The City does not claim it followed Ohio's forfeiture of property procedures, which are set forth in Chapter 2981.  Section 4549 of the Ohio Code, which is referenced in § 2981.12(A)(6)(b), concerns stolen autos and auto parts.  Thus, because the vehicles did not fall within § 2981.11(A)(2) or § 2981.12(A)(6), § 2981.11 would require police to return the property or, if to be disposed of, to do so  under § 2981.12(B), which requires court approval.

## C.

Against this backdrop, Ohio courts have struggled to determine which provisions concerning property in police custody are applicable under what circumstances, and have acknowledged that there appears to be overlap between the various sections.  Plaintiffs are correct that Ohio courts have applied a gloss to § 4513.61 and have declined to apply it in several situations where a vehicle has lawfully come into the sheriff's or police's possession but was not abandoned.  Ohio courts, both before and after the language the district court relied on was added to § 4513.61 by amendment in 1997, have, in certain circumstances, required evidence that a vehicle owner actually abandoned, *i.e.*, intentionally relinquished ownership of, the vehicle before applying § 4513.61.

The Ohio Court of Appeals held in *Doughman v. Long*, 536 N.E.2d 394, 396 (Ohio Ct. App. 1987) that §§ 4513.60–.63 apply only to vehicles abandoned by their owners. In *Doughman*, the plaintiff's vehicle was stolen and later abandoned by a thief. Although the plaintiff had notified police that his vehicle had been stolen, police impounded and towed the vehicle to a body shop after locating it. The plaintiff's complaint alleged that the police officers and the towing company involved in impounding and storing the plaintiff's vehicle were negligent in failing to inform him that his vehicle had been recovered, and that the failure to return the vehicle to him constituted conversion. 536 N.E.2d at 397. The trial court granted summary judgment to the defendants and awarded the company towing and storage fees on its counter-claim. *Id.* at 398. The Ohio Court of Appeals reversed, concluding that "R.C. 4513.60 through 4513.63 relate to abandoned vehicles":

> Because this case involves the theft and subsequent abandonment of a stolen vehicle by its thief, and is not one wherein the vehicle's owner or a person operating it with the owner's consent is involved, we conclude R.C. 4513.60 through 4513.63 do not apply. This is simply not a case where it is fair to suggest appellant abandoned his pickup and thereby impliedly consented to its towing and storage until he chose to reclaim it. Nor is this a case where appellant was responsible for creating a nuisance on the highway. Because R.C. 4513.60 through 4513.63 do not apply, [the company] had no statutory lien arising therefrom . . . . [and] the trial court erred . . . in granting . . . judgment against appellant for $3,700.

*Doughman*, 536 N.E.2d at 398–401 (citations omitted). At the time *Doughman* was decided, § 4513.61 did not include the phrase referring to a vehicle "that has come into the possession" of chief of police "as a result of the performance of" his duties. But, importantly, cases decided after that language was added in 1997 follow *Doughman* nevertheless. *See State Farm Mut. Auto. Ins. Co. v. Advanced Impounding & Recovery Servs.*, 848 N.E.2d 534, 537–38 (Ohio Ct. App. 2006) ("An abandonment is the relinquishing of a right or interest with the intention of never again claiming it. State Farm did not demonstrate an intent to forever relinquish its right to

the car . . . [it] requested the car's return and offered to pay AIRS some of its fees, but only fees accruing from the time it learned that AIRS had the car. This was not an unreasonable demand." (citations and quotations omitted)); *Labay v. Caltrider*, No. 22233, 2005 WL 662940, at *5, (Ohio Ct. App. Mar. 23, 2005) (observing that when a vehicle is stolen and abandoned by a thief, the vehicle's owner has not consented to its removal and a police official, not being the owner's agent, cannot give consent for the owner; since there is no implied consent, §§ 4513.60 through 4513.63 do not apply); *State Farm Ins. Co. v. Jones*, No. 2002-P-0063, 2003 WL 21750630, at *2–3 (Ohio Ct. App. July 25, 2003) (observing that "because the truck was stolen rather than abandoned, and because appellee was unaware of the vehicle's location, appellant was only entitled to the towing fee and the storage costs incurred after appellant informed appellee that it had the vehicle in its possession"); *First Fed. S. & L. Ass'n of Warren v. A & M Towing & Road Serv., Inc.*, 711 N.E.2d 755, 760 (Ohio Ct. App. 1998) ("Since we have held that R.C. 4513.61 is inapplicable . . . because the automobile was not abandoned, appellee is not entitled to the storage fees awarded by the trial court." (citing *Doughman*, 536 N.E.2d at 400–01)). In all these cases, the vehicle at issue had come into the possession of the chief of police as a result of the performance of his duties, yet the court looked beyond that fact to see if the vehicles had been abandoned.[5]

---

[5] The City relies on *Blue Ash v. Kavanagh*, 862 N.E.2d 810 (Ohio 2007), to support that § 4513.61 applies beyond abandoned vehicles and "does not distinguish between abandoned and other types of vehicles." Appellee Br. 15-16. But *Blue Ash* addressed an issue not relevant to the instant case: "Whether discretionary impoundment of a vehicle during a legitimate traffic stop constitutes an unreasonable seizure under the Fourth Amendment." 862 N.E.2d at 813. The defendant's operator's license and tags had both been expired for almost three months. Because the defendant could not lawfully drive and the vehicle could not be parked or pushed to a safe location on the highway, the officer decided to impound the vehicle. *Id.* at 811. The officer testified that departmental policy leaves the decision whether to impound the vehicle to the officer's discretion where a driver has an expired license and plates. The Ohio Supreme Court

On the other hand, the Ohio courts have also expressed some uncertainty regarding which statute applies. In *Hamilton Acceptance Corp. v. Smith*, No. 03AP-115, 2003 WL 22681796, at *1 (Ohio Ct. App. Nov. 13, 2003), a finance company filed suit against the sheriff and towing company alleging that they negligently and recklessly disposed of a vehicle on which it held a lien without following the requirements of § 4513.62 and § 2933.41,[6] the predecessor statute to § 2981.11. The trial court granted summary judgment to the defendants and the plaintiff appealed, claiming that issues of fact precluded summary judgment. *Id.* at *2. The vehicle came into the sheriff's possession and was impounded after the purchaser/driver, who had ceased making payments, was stopped for several traffic offenses, including driving under a Financial Responsibility Act suspension. *Id.* The sheriff's department sent notice to Hamilton Acceptance Corporation (HAC) by letter dated February 18, 2000. There was some dispute regarding when HAC actually received the notice and whether HAC called the sheriff about the vehicle before sending a letter demanding release of the vehicle. *Id.* at *3. The Ohio Court of Appeals determined that the vehicle came into the sheriff's possession as a result of the performance of his duties and, addressing § 4513.62, reversed on the basis that there was a genuine dispute regarding whether HAC contacted the sheriff within ten days of receiving the February 18 letter, as the letter required. *Id.* at *4–5. Addressing § 2933.41 pertaining to property that has been lost, abandoned, stolen, seized pursuant to a search warrant, or otherwise lawfully seized or forfeited, and that is in the custody of a law enforcement agency" which property "shall be kept

---

noted that both the Department's policy and § 4513.61 authorized police to use discretion whether to impound a vehicle, and then turned to the question whether the impoundment was a pretext for an evidentiary search. 862 N.E. 2d at 813. Unlike in *Blue Ash*, Plaintiffs in the instant case do not challenge the impoundment or search of their vehicles; rather, they attack the absence of any post-impoundment process.

[6] Section 2933.41, now repealed, contained language later included in § 2981.11.

safely pending the time it no longer is needed as evidence and shall be disposed of pursuant to this section," the Court of Appeals stated, "By their terms, RC 4513.61 and 2933.41 arguably overlap to some extent . . . , regarding property lawfully impounded by a law enforcement agency." *Id.* at \*5 (citing *Broadvue Motors, Inc. v. Maple Heights Police*, 734 N.E.2d 417 (Ohio Ct. App. 1999)).

In *Broadvue Motors*, the Ohio Court of Appeals applied § 4513.61 to a vehicle that was towed due to fictitious plates. 734 N.E.2d at 419. The police had knowledge that the vehicle belonged to a dealership and sent the dealership proper notice, but failed to list the dealership on the affidavit required under the statute. *Id.* at 421. Although the court analyzed the case under § 4513.61, it also discussed § 2933.41, and stated that that statute, might apply as well. *Id.* The Ohio Court of Appeals concluded that "[b]ecause Maple Heights did not comply with § 4513.61, it had to fulfill the dictates of R.C. 2933.41 and return the vehicle to its proper owner at the earliest possible time." *Id.*

*Hamilton Acceptance Corp.* is also instructive on a different point. The district court here rejected any argument that Plaintiffs claimed their vehicles within the statutory period on the basis that they never tendered towing and storage charges or title. But the Ohio Court of Appeals in *Hamilton Acceptance Corp.* found an issue of fact where the plaintiff asserted that a representative called the Sheriff's Office regarding the vehicle, asked that it be released, and was rebuffed. *Hamilton Acceptance Corp.*, 2003 WL 22681796, at \*3.

Finally, in *State v. Hoover*, No. WD-0-051, 2005 WL 1793759, at \*1–2 (Ohio Ct. App. July 29, 2005), the court applied Ohio Rev. Code Ann. § 2933.41, now § 2981.11, to property police seized on arrest. Section 2933.41 provided:

> (A)(1) Any property . . . that has been lost, abandoned, stolen, seized pursuant to
> a search warrant, or otherwise lawfully seized or forfeited, and that is in the

custody of a law enforcement agency shall be kept safely pending the time it no longer is needed as evidence and shall be disposed of pursuant to this section . . . .

The *Hoover* court observed that another Ohio statute, § 737.29, seemingly applied with equal force:

> R.C. 737.29 further provides that:
>
> Stolen or other property recovered by members of the police force . . . shall be deposited and kept in a place designated by the mayor. Each such article shall be entered in a book kept for that purpose, with the name of the owner, if ascertained . . . .
>
> An inventory of all money or other property shall be given to the party from whom taken, and in case it is not claimed by some person within thirty days after arrest and seizure it shall be delivered to the person from whom taken, and to no other person. . . .

*Hoover*, 2005 WL 1793759, at *1–2.

Consistent with the discussion above, the Observation to 1 Ohio Jur. 3d Abandoned Property § 23 states that §§ 737.29, 737.31, and 737.32:

> [a]ddress the disposal of stolen, seized, and "other" property, and distinguish claimed property from unclaimed property. The treatment of an item of property depends on the circumstances under which it comes into police custody and whether the true owner can be identified. "Seized" property necessarily comes from a "person arrested" or "person from whom" it was taken, and the statutes state how it must be disposed of.

## D.

If anything is apparent from these statutes and cases, it is that it is not clear which statute or statutes apply under the circumstances presented in the instant case. And, although the above analysis is consistent with Plaintiffs' position, the district court correctly observed that even if the City used the wrong statute, that would not constitute a violation of § 1983 in and of itself. Plaintiffs must show a deprivation of a federal constitutional right.

**IV.**

Plaintiffs have not directly challenged the constitutionality of § 4513.61; rather, they assert that the City's use of the statute under these circumstances deprived them of due process because they had no opportunity for a hearing to challenge the City's actions before they were permanently deprived of their vehicles.

A plaintiff states a claim under § 1983 by alleging the violation of a right secured by the Constitution and laws of the United States, and showing that the alleged deprivation was committed by a person acting under color of state law. *Gray v. City of Detroit*, 399 F.3d 612, 615 (6th Cir. 2005).

> Section 1983 does not permit a plaintiff to sue a local government entity on the theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 [] (1978). A plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing. *Id.* A local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Id.*

*Gregory v. Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). Official municipal policy includes "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell*, 436 U.S. at 691). There is no question that Plaintiffs were deprived of their vehicles pursuant to the City's custom and practice of disposing of seized vehicles under § 4513.61. Plaintiffs presented the affidavit of Middletown's Prosecutor from 2009 to 2012, which averred that the City Law Director assigned her the responsibility of creating the policy and procedure for seizure, towing and storage of automobiles, that she worked extensively with the Law Director and police in creating this policy and procedure, and that the policy ultimately was approved by the Law Director and implemented by the police department. PID 121-22.

The Fourteenth Amendment prohibits the state from depriving any person of property without due process of law. U.S. Const. Amend. XIV § 1. To establish a procedural-due-process violation under 42 U.S.C. § 1983, Plaintiffs are required to demonstrate that they had a property interest protected by the Due Process clause, were deprived of that protected interest within the meaning of the Due Process clause, and that the state did not afford adequate procedural rights before depriving them of their protected interest. *See Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000)). *Mathews v. Eldridge*, 424 U.S. 319 (1976), instructs that we determine what post-impoundment process is due by weighing several factors:

> [1] The private interest that will be affected by the official action; [2] the risk of an erroneous deprivation[;] ... [3] the probable value, if any, of additional or substitute procedural safeguards; and [4] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Shoemaker v. City of Howell*, 795 F.3d 553 (6th Cir. 2015) (citing *Mathews*, 424 U.S. at 335).

Regarding the first factor,[7] Plaintiffs' private interests in owning and utilizing their vehicles are substantial; their livelihoods rest in large part on their vehicles, as they need them to get to work, school, to access health care, and for other necessities, and the vehicles represent a large investment (Henry and Hardy's vehicles were fully paid for and Baker used his van for transport to his painting jobs and to store paint and other materials). Regarding the second factor, because § 4513.61 affords no post-impoundment hearing, Plaintiffs had no opportunity to be heard before being permanently deprived of their vehicles. They could not challenge the applicability of the statute, establish whether they were misled by police or the impound lot,

---

[7] The City barely responds to Plaintiffs' argument that § 4513.61 fails the *Mathews* balancing test. *See* Appellee Br. 24-28.

assert their efforts to claim their vehicles, or challenge the official actions taken with respect to their vehicles, the amounts charged or the disposition of the vehicles. The risk of an erroneous deprivation was thus high. Regarding the third factor, the probable value of a post-impoundment hearing was high for the same reason. Regarding the fourth factor, the City's burden in providing a post-impoundment hearing would be minimal. After being impounded and towed to a lot, a vehicle no longer obstructs traffic or constitutes a nuisance. Further, the City makes no argument that affording a post-impoundment hearing would impose a significant fiscal or administrative burden. Nor does the City argue that vehicles remaining at an impound lot pending a post-impoundment hearing would impose a significant fiscal or administrative burden. Appellee Br. 24-28. The *Mathews* balancing test thus weighs heavily in Plaintiffs' favor.

We agree with the D.C. Circuit's reasoning in *Propert*:

Depending on the tilt of the *Mathews* balance in a particular case . . . the timing and content of the hearing may vary, *see, e.g., Mathews*, 424 U.S. at 347–49. Nevertheless, however weighty the governmental interest may be in a given case, the amount of process required can never be reduced to zero–that is, the government is never relieved of its duty to provide *some* notice and *some* opportunity to be heard prior to final deprivation of a property interest. *See Logan* [*v. Zimmerman Brush Co.*], 455 U.S. [422,] 434 [(1982)] ("[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."); *Parratt v. Taylor*, 451 U.S. 527, 540 [] (1981) ("Our past cases mandate that some kind of hearing is required at some time before a State finally deprives a person of his property interests.")
. . . .
The rule that a hearing must occur before a deprivation becomes final has been applied uniformly in other cases involving the towing and impoundment of automobiles. Every court which has considered the issue has held that the owners of towed vehicles–whether illegally parked, abandoned or junk–are entitled, at minimum, to post-deprivation notice and a hearing. [collecting cases]

*Propert*, 948 F.2d at 1332.

In *Ross v. Duggan*, 402 F.3d 575, 584 (6th Cir. 2004), this court observed that the initial seizures of the plaintiffs' vehicles pursuant to Michigan's nuisance abatement statute were

constitutionally justified "because it was undisputed that the owners received reasonable notice and a fair post-impoundment-but-pre-forfeiture opportunity to contest the forfeiture. Similarly, in *Goichman v. Rheuban Motors Inc.*, 682 F.2d 1320 (9th Cir. 1982), the Ninth Circuit held that provision of a post-towing hearing within forty-eight hours of a vehicle owner's request satisfied due process requirements. But courts have consistently held that the failure to hold such a hearing violates due process. In *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994), the Eighth Circuit held that a court order directing police to impound any vehicle stopped for violating state statutes and mandating that impounded vehicles be held until the registered owner pays all fees, costs, and fines related to licensing of the vehicle "is unconstitutional on its face because it fails to provide for adequately prompt [post-deprivation] hearings." In *Draper v. Coombs*, 792 F.2d 915, 923 (9th Cir. 1986), the Ninth Circuit reversed the district court's dismissal of a § 1983 claim for failure to state a claim against various officers and the City of Portland, Washington, holding that a Portland ordinance violated due process by authorizing towing of a vehicle after the vehicle owner's arrest without providing any hearing with respect to towing or charges.

We conclude that the City's custom and practice of disposing of vehicles seized under these circumstances and not claimed by payment within ten days under § 4513.62, without offering any post-impoundment process, violates Due Process.

## V.

Henry also appeals the dismissal of his private-taking claim. A private taking occurs when a government takes property to benefit a private party and no appreciable use or benefit is conferred on the public. *Montgomery v. Carter Cty.*, 226 F.3d 758, 771–72 (6th Cir. 2000). The district court dismissed this claim on the ground that "at least one public purpose for transferring title to Henry's car to Mark's Towing is evident from the text of § 4513.61–it abated a public

nuisance." PID 173 (citing *Warren v. City of Athens*, 411 F.3d 697, 705 (6th Cir. 2005). Given that Henry's vehicle was towed directly from his driveway to Mark's Towing in connection with his arrest, it is difficult to conclude without more that a vehicle parked in the private driveway of its owner constitutes a public nuisance or that transfer of title from the City to Mark's Towing, when the vehicle was already at Mark's Towing, abated a public nuisance. It follows that summary judgment was prematurely granted.

## VI.

For the stated reasons, we reverse the grant of summary judgment to the City on Plaintiffs' procedural-due-process claims and Henry's private-taking claim and remand for further proceedings.