[Cite as *Peterson v. Booth*, 2023-Ohio-1301.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JEFFREY B. PETERSON | : | |
| | : | |
| Appellant | : | C.A. No. 29504 |
| | : | |
| v. | : | Trial Court Case No. 20CVF2867 |
| | : | |
| RACHEL L. BOOTH, ET AL. | : | (Civil Appeal from Municipal Court) |
| | : | |
| Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 21, 2023

. . . . . . . . . . .

MATTHEW S. HAUER & MATTHEW C. SORG, Attorneys for Appellant

JOSEPH W. STADNICAR, Attorney for Appellees

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Plaintiff-Appellant Jeffrey B. Peterson appeals from a judgment of the Dayton Municipal Court, which ruled against him in his replevin and conversion actions against Defendant-Appellee Rachel L. Booth. Booth has cross-appealed. For the reasons that follow, the judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.

## I.    Facts and Procedural History

{¶ 2} Peterson and Booth met in 2014 and soon began a romantic relationship. The couple moved in together, and in late 2017 or early 2018, they moved to a house at 240 Park Drive in Dayton. Booth owned the residence, but the parties split the living expenses 50/50. Each individual brought personal items into the home, and the couple also purchased items together. In addition to their romantic relationship, Peterson and Booth began a professional one as well, starting a company called "Abode CPR, LLC." The business, which launched in 2015, purchased, renovated, and sold residential properties.

{¶ 3} The relationship began to sour in mid-2019, and by November 2019, Booth asked Peterson to move out; he refused to do so. In June 2020, Booth filed for eviction, and Peterson was ordered by the court to be out of the house by June 23 at 11:59 pm. Peterson scheduled a moving company to move out his big items on June 21, but he testified that after receiving the eviction notice on June 16, he began moving smaller items out of the Park Drive residence and into an apartment and storage unit he had rented.

{¶ 4} In an effort to transport items from the house, Peterson enlisted the help of his friend, Jim Wahl, and the two moved items between June 19 and June 22. The task of moving the belongings was not without incident. According to trial testimony, on several occasions, Booth tried to physically inhibit Peterson from filling up his vehicle and leaving, and in some instances she succeeded. Peterson testified that "[s]he * * * tried to prevent me from leaving by backing into the front with her body [on] the Envoy. Her hands outspread backwards. Her butt against the hood of the Envoy. She tried to prevent me

from pulling forward. That was on the 19th." Trial Tr. at 53. On another occasion, "she ended up actually jumping into the back cargo area, arms outspread at a 45-degree angle. * * * I had to physically remove her from the back of the Envoy." Trial Tr. at 53. Booth admitted to placing herself in the back of Peterson's SUV; she stated it was because she saw some of her personal items (an extension cord and gardening tools) in the vehicle. She also admitted that she had called the police and purposely tried to slow Peterson's progress so he would still be there when officers arrived. Wahl also confirmed that Booth attempted to keep Peterson from loading items into his car.

{¶ 5} Ultimately, Peterson felt the situation and tensions with Booth had escalated too far, and after another confrontational and physical incident on June 22, he stopped trying to get his belongings out of the house. "I thought that the circumstance was deteriorating based on her actions and my training, my instinct, and my experience from the police department told me to avoid this physical situation[.]" Even after the deadline to vacate passed, there was still a "slew" of Peterson's items left in the residence. Booth admitted to moving most of the items to the "carriage house" on the property, where they remained. Peterson testified, and the record shows, that because of his inability to access some of his personal items still in the carriage house, he was forced to buy replacements.

{¶ 6} According to the record, there also appeared to be many property items whose ownership was disputed – items that both parties claimed or that were purportedly joint purchases. Additionally, the end of Peterson and Booth's romantic relationship also marked the end of Abode CPR, and as of March 2023, there was an active case, Montgomery C.P. No. 2019 CV 06233, which sought to dissolve the company and its

assets.

{¶ 7} On July 8, 2020, Peterson filed his initial complaint against Booth and Sara Rollman (who is not a party to this appeal) raising claims of replevin, conversion, and trespass to chattels/property damage. After months of motion practice, Peterson dismissed the trespass to chattels/property damage claim, and on April 5, 2022, a bench trial was held on the remaining replevin and conversion counts.

{¶ 8} At trial, the court heard testimony from Peterson and Booth, Wahl, Rollman, Officer Jonathan Bowman (who was on scene to keep the peace), and Gary Koogler (an auctioneer hired to appraise the items in the carriage house). Many exhibits were also admitted and considered by the court, including pictures, lists and appraisals of Peterson's belongings and disputed items. Exhibit 1, in particular, featured 62 items Peterson claimed belonged to him alone or that had been joint purchases. At the close of testimony, the court ordered post-trial briefing.

{¶ 9} On May 17, 2022, the trial court awarded judgment for Booth on the replevin and conversion claims, but it ruled that, as a matter of equity, she must return 33 enumerated items belonging solely to Peterson. Those items are listed in the table below. The court found the remaining property (which consisted of big-ticket items like household appliances) to belong to Booth or have been purchased by Abode CPR, and these items were therefore subject to the case pending in common pleas court.

| Decorative Bikes (2) | Instapot | Bar Stools (3) |
| Kitchen Cabinet (detached) | Playmate Cooler | Craftsman Tool Chest |
| Work Bench | Porter Cable Saw and Tools | Dewalt Impact and Driver |

| Master Lock Boxes (3) | Panel Front Door | Giant 10-Speed Bike |
|---|---|---|
| Schwinn Metro Cycle | 4 Section Outdoor Screen | Spalding Golf Clubs/Bag |
| Copper Wash Boiler | Space Heater on Castors | Black Metal Cabinet |
| Folding Lawn Seats (2) | 6-Quart Crock Pot | Cherry Dining Chair |
| Toolbox and Misc. Tools | 30-Pint Electric Humidifier | Misc. Box of Paints |
| Corn Hole Game | Plant Stand | Coffee Grinder |
| Plaster of Paris Figurine | Rope Hamock | Christmas Tree Stands (2) |
| 6" Artificial Christmas Tree | Bag Chairs (2) | Cherry Empire Chest |

{¶ 10} Peterson has filed this appeal, raising two assignments of error relating to the denial of his claims. Booth cross-appeals the trial court's ruling that she return the 33 listed items.

## II. Replevin

{¶ 11} In his first assignment of error, Peterson asserts that the trial court incorrectly applied and analyzed the elements of replevin, resulting in an erroneous outcome. We agree.

{¶ 12} The standard of review for a civil bench trial is whether the judgment of the court was against the manifest weight of the evidence. *Harris v. Sunsong Holdings, Inc.*, 2021-Ohio-1213, 169 N.E.3d 1030, ¶ 9 (2d Dist.). The same manifest weight standard applies in both civil and criminal cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17; *Lexis Nexis, a Division of Relx Inc. v. Murrell*, 2022-Ohio-550, 185 N.E.3d 648, ¶ 22 (2d Dist.). "A weight of the evidence argument challenges

the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *see Eastley* at ¶ 19. An appellate court may not substitute its view for that of the trier of fact. Rather, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and then determine whether the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} An appellate court is guided by the presumption that the trial court's findings of fact were correct; however, its application of the law is reviewed de novo. *Id.*

{¶ 14} Replevin is a statutorily-created means to obtain personal property that one has the right to possess. *See Walther v. Cent. Trust Co., N.A.*, 70 Ohio App.3d 26, 31-32, 590 N.E.2d 375 (2d Dist.1990). It is based on the existence of an unlawful detention, and its purpose is the return of the property to the rightful possessor. Replevin can be utilized even if the original taking was not wrongful. Overview, Oh. Consumer L. § 19:82. Put another way, replevin has two elements: (1) the plaintiff is the owner of the property, and (2) plaintiff is entitled to possession of the property. *Walther* at 32; *see generally* R.C. Chap. 2737.

{¶ 15} If a party is successful in a replevin claim, "the final judgment shall award permanent possession of the property and any damages to the party obtaining the award to the extent the damages proximately resulted from the taking, withholding, or detention

of the property * * *, and the costs of the action. If delivery of the property cannot be made, the action may proceed as a claim for conversion." R.C. 2737.14.

{¶ 16} When we apply the elements of replevin to this case, the trial court erred in its application of law. At trial, Peterson presented the court with an extensive list of personal property that he had been unable to retrieve and that was still in the carriage house at the 240 Park Drive residence. Booth did not dispute that the property belonged to Peterson (meeting the first replevin element, that Peterson was the owner of the property); instead, Booth claimed that Peterson was not entitled to possession because he had abandoned the items when he failed to collect them by 11:59 pm on the eviction date. A consideration of the facts in the record belies the notion that Peterson abandoned the property.

{¶ 17} Property is abandoned when "the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession or enjoyment." *McCain v. Brewer*, 2d Dist. Darke No. 2014-CA-8, 2015-Ohio-198, ¶ 17, quoting *Doughman v. Long,* 42 Ohio App.3d 17, 21, 536 N.E.2d 394 (12th Dist.1987). It requires proof of the intent to abandon plus acts or omissions implementing the intent. *Id.* The Twelfth District has noted that abandonment is a "virtual throwing away without regard as to who may take over or carry on." *Davis v. Suggs*, 10 Ohio App.3d 50, 52, 460 N.E.2d 665 (12th Dist.1983). What happened here was not abandonment.

{¶ 18} After Peterson was served with the eviction notice mandating that he and all of his belongings be out of Booth's house by 11:59 p.m. on June 23, 2020, he began a multi-day process of removing property. While Peterson got many of his things out of

the house, Booth made it increasingly difficult to finish the task. Trial testimony indicated that, on multiple occasions, Booth physically prevented Peterson from loading his SUV, one time going as far as climbing into the back of the vehicle to use her body as a barrier. Peterson testified that he had to remove her from the vehicle and realized that things could escalate even further. He told the court that he chose not to stay because he "didn't feel like beating her ass." Trial Tr. at 85-86. "She was far too confrontational for me." Trial Tr. at 53. Instead, Peterson got an attorney and, two weeks later, he filed the complaint which is the genesis of this appeal. This was not a "virtual throwing away" of Peterson's property, and therefore he was entitled to possession of it.

{¶ 19} Instead of using the two-element test for replevin noted above, it appears that the trial court added a third element to its analysis which erroneously tipped the scale in favor of Booth. The trial court stated that "[o]nce the Plaintiff proves he has a right of possession that is superior to the Defendant's, he must prove that the Defendant unlawfully possessed the property." Decision and Judgment at 3. The court's new element does not sound in replevin, but rather conversion – a related, yet separate claim. Ohio courts have been clear that replevin involves the unlawful **detention** of property, not an unlawful **taking**. *Long v. Noah's Lost Ark, Inc.*, 2004-Ohio-4155, 814 N.E.2d 555, ¶ 30 (7th Dist.); *Tewarson v. Simon*, 141 Ohio App.3d 103, 117, 750 N.E.2d 176 (8th Dist. 1978); *Doff v. Lipford*, 5th Dist. Stark No. 2019CA00017, 2019-Ohio-2318, ¶ 43 (a replevin suit seeks to recover goods from one who wrongfully detains them and does not require an unlawful taking). By utilizing the extra element, the trial court held that Peterson could not prevail on his replevin claim, which was an error. Peterson proved that (1) he was the

owner of the disputed property and (2) he was entitled to possess it; Peterson met all of the elements of replevin.

{¶ 20} Nevertheless, Booth makes one more argument, which is procedural in nature. She claims that Peterson is not eligible for relief under the replevin statute as he "failed to file a Motion for an order of possession of property as authorized by Revised Code section 2737.03[.]" Appellee's Brief at 11. According to this Court's precedents, this argument is incorrect.

{¶ 21} Under R.C. 2737.02 and R.C. 2737.03, a plaintiff in a replevin action can obtain an award of their property prior to a final judgment. R.C. 2737.02 states that the "possession of specific personal property *may* be recovered in a civil action prior to the entry of judgment[.]" (Emphasis added). Likewise, R.C. 2737.03 posits that "[a]ny party to an action involving a claim for the recovery of specific personal property, upon or at any time after commencement of the action, *may* apply to the court by written motion for an order of possession of the property." (Emphasis added). The language of the statutes gives the trial court the option to grant pre-judgment recovery but does not require it.

{¶ 22} Peterson, on the other hand, correctly relies on R.C. 2737.14 for the proposition that a final judgment can be awarded without the preliminary step. We have held that the trial court can issue a final judgment awarding permanent possession to a party whether or not there has been a pre-judgment order awarded pursuant to R.C. 2737.02 or R.C. 2737.03 if the delivery of the disputed property can be made. *Anca v. Anca*, 2d Dist. Miami No. 1995-CA-33, 1996 WL 220891, *2 (May 3, 1996). *See also Noah's Lost Ark* at ¶ 59-60; *First Fed. S. & L. Assn. of Warren v. A & M Towing & Road*

*Serv., Inc.*, 127 App.3d 46, 50-51, 711 N.E.2d 755 (11th Dist.). According to our holding in *Anca*, a pre-judgment award is unnecessary to obtain a final judgment under R.C. 2737.14.

{¶ 23} The trial court erred by granting judgment to Booth on the replevin claim as Peterson proved that (1) he was the owner of at least some of the property in Plaintiff's Exhibit 1 and (2) he was entitled to possess it. It appears that the trial court came to the opposite conclusion, at least in part, by adding an element that did not belong.

{¶ 24} The trial court made an additional error (one on which both parties agree) by awarding, as a matter of equity, possession of certain items to Peterson. "Replevin is solely a statutory remedy in Ohio. It is an action at law, not in equity and, therefore, a court cannot provide remedies not specifically enumerated by statute." *Am. Rents v. Crawley,* 77 Ohio App.3d 801, 804, 603 N.E.2d 1079 (10th Dist.1991). Thus, it was an error for the trial court to award property to Peterson as a matter of equity.

{¶ 25} Having found that the trial court erred by ruling against Peterson in his replevin action, we sustain his first assignment of error. We also sustain Booth's cross-appeal related to the award of property to Peterson as a matter of equity.

### III.   Conversion

{¶ 26} Peterson also claims that the trial court erred by ruling against his conversion claim, asserting that the denial was against the manifest weight of the evidence.

{¶ 27} "Conversion is an exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another." *Joyce v.*

*Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). To succeed on a conversion claim, it must be established that the possessor refused to return the property to its rightful owner. *Kirby v. Oats*, 2020-Ohio-301, 151 N.E.3d 1083, ¶ 31 (2d Dist.). The elements of a conversion action are: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by wrongful act or disposition of plaintiff's property rights; and (3) damages. *Haul Transport of VA, Inc. v. Morgan*, 2d Dist. Montgomery No. 14859, 1995 WL 328995, *3 (June 2, 1995).

{¶ 28} Peterson's chief argument is that his conversion claim was for jointly-owned or acquired property – items such as kitchen appliances. He reasons that he should be entitled to damages equal to one half of the value of the items. *See Schafer v. RMS Realty*, 2d Dist. Montgomery No 21869, 2007-Ohio-7155, ¶ 67. And while he is correct on the state of the law in this regard, the trial court, after hearing testimony from both parties, made the determination that the items (which included appliances, a water heater, shop vac, lock boxes, lawn mowers, doors, kitchen cabinets, and a lawn spreader) belonged to and were purchased by Abode CPR.

{¶ 29} Peterson takes issue with the trial court's finding, pointing out that in a previous deposition Booth testified that the "extent of [Abode's] physical assets" included "construction material [and] some tools." He also notes that Booth did not present any evidence (receipts, credit card statements, etc.) which would indicate the company bought them. So while we may have come to a different conclusion than the trial court based on the facts presented, it is well established that an appellate court may not merely substitute its view for that of the trier of fact. *State v. Thompson*, 10th Dist. Franklin No.

16AP-812, 2017-Ohio-8375, ¶ 25. When conflicting evidence is presented at trial, a judgment is not against the manifest weight of the evidence simply because the trier of fact believed one side's testimony over the other's. *In re M.J.C.*, 12th Dist. Butler No. CA2014-05-124, 2015-Ohio-820, ¶ 35.

**{¶ 30}** "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility." *State v. Jenkins*, 2d Dist. Montgomery No. 27701, 2018-Ohio-3697, ¶ 24, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *Id.* The fact that the evidence or testimony is subject to different interpretations does not mean the judgment is against the manifest weight of the evidence. *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61 and 2013-CA-62, 2014-Ohio-3432, ¶ 24.

**{¶ 31}** In this case, the court below, acting as the trier of fact, listened to the testimony of both sides and credited Booth. Believing that the disputed property was purchased by Abode CPR, and therefore not jointly-owned, did not create such a manifest miscarriage of justice that the outcome must be overturned and a new trial ordered. This is not the "exceptional case in which the evidence weighs *heavily* against the [outcome]." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Accordingly, we defer

to the trial court's conclusion and overrule Peterson's second assignment of error.

### IV. Conclusion

**{¶ 32}** Having determined that the trial court erred by granting judgment to Booth as to the replevin claim and by equitably awarding property to Peterson, we reverse and remand the court's judgment with respect to that claim with the instruction that the court award permanent possession of the personal property listed in the chart above to Peterson and determine what damages (if any) proximately resulted from the taking, withholding, or detention of the property, and the costs of the action. The judgment of the trial court as to conversion is affirmed.

. . . . . . . . . . . . .


WELBAUM, P.J. and HUFFMAN, J., concur.