[Cite as *Holsopple v. Village Green-Trilogy Health Servs., L.L.C.*, 2023-Ohio-3729.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

|  |  |  |
|---|---|---|
| MARILYN K. HOLSOPPLE, POWER OF ATTORNEY FOR MARCEIL JOHNSTON | : | |
| | : | |
| | : | C.A. No. 2023-CA-7 |
| | : | |
| Appellant | : | Trial Court Case No. 23-CVI-001-0050 |
| | : | |
| v. | : | (Civil Appeal from Municipal Court) |
| | : | |
| VILLAGE GREEN-TRILOGY HEALTH SERVICES, LLC | : | |
| | : | |
| Appellee | | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 13, 2023

. . . . . . . . . . .

MARILYN K. HOLSOPPLE, Appellant, Pro Se

PATRICK L. OJEIL, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Marilyn K. Holsopple appeals pro se from the trial court's entry of judgment against her on a small-claims complaint seeking to recover $5,680 from defendant-appellee Village Green-Trilogy Health Services, LLC ("Village Green").

{¶ 2} Holsopple filed the lawsuit purportedly in her capacity as power of attorney

for her elderly mother, Marceil Johnston. The basis of the lawsuit was that Village Green should have billed Medicare for the cost of Johnston's stay at Village Green's facility and should have reimbursed Holsopple for her payment of the bill. Following a bench trial, the trial court found Holsopple responsible for the bill because she had agreed to a private-pay arrangement.

{¶ 3} On appeal, Holsopple contends Village Green misrepresented the nature of the service it provided, fraudulently billed for a service it was not licensed to provide, and committed elder abuse by having Johnston sign a document. The essence of her argument is that "if Village Green held the proper license, Medicare could have been billed and Medicare would have paid" the amount at issue. *See* Appellant's Brief at 4.

{¶ 4} We conclude that the trial court correctly found Holsopple obligated to pay the disputed bill. Holsopple also failed to prove any misrepresentation, fraud, or elder abuse relieving her of her obligation under the private-pay agreement. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 5} Johnston stayed at Village Green's skilled-care facility from July 21, 2021, through September 10, 2021. Medicare covered the cost of this stay. On September 11, 2021, she was transferred to Village Green's assisted-living facility, where she remained through October 6, 2021. Village Green represented that Medicare would not pay for this portion of Johnston's stay, and Holsopple personally signed a private-pay agreement acknowledging her responsibility to pay the bill. Holsopple then wrote a check to Village Green to pay for her mother's stay. The check was drawn on a joint checking account in

the name of Holsopple and Johnston.

{¶ 6} After Holsopple paid the bill for her mother's stay in the assisted-living facility, she began asking Village Green to seek reimbursement through Medicare. Holsopple insisted that "short-term rehab" stays were covered by Medicare. At Holsopple's request, Village Green eventually submitted the bill to Medicare, which denied coverage. At trial, Holsopple testified that Medicare denied the claim because Village Green had billed it incorrectly. She also testified about her belief that Village Green was not licensed to provide short-term rehabilitation services. Holsopple asserted that Medicare would have paid if Village Green had been licensed. In the absence of such a license, she argued that Village Green had committed fraud.

{¶ 7} Village Green representative Gwen Huffaker also testified at trial. She explained that Village Green operated a licensed skilled-care facility that was covered by Medicare and a "residentially licensed" assisted-living facility known as "Assisted Almost Home" that was not covered by Medicare. Huffaker testified that on September 11, 2021, Johnston was transferred from the skilled-care facility to the assisted-living facility. At that time, Johnston signed a notice of Medicare non-coverage. In addition, Holsopple signed a self-pay agreement and later paid for her mother's stay with a check.

{¶ 8} Huffaker testified that she could not bill Johnston's assisted-living stay as "Medicare covered" because it was not, and doing so would constitute insurance fraud. Huffaker explained that she had billed the assisted-living stay as "non-covered" because Holsopple had insisted that her private supplemental insurance would cover the expense if Huffaker submitted it to Medicare. Huffaker's own understanding was that if Medicare

would not pay, then supplemental insurance would not pay either.

{¶ 9} On cross-examination, Huffaker testified that Village Green had no mechanism to bill Medicare for an assisted-living stay because it was not covered by Medicare. For that reason, Huffaker submitted the bill to Medicare as non-covered, and Medicare denied payment. It appears that Holsopple's supplemental insurance did not pay the bill either. Finally, Huffaker clarified that Village Green did offer Medicare-covered short-term "rehab stays" in its licensed skilled-care facility. She reiterated that Johnston was in the residential assisted-living facility, not the skilled-care facility, during the time in question.

{¶ 10} The trial court entered judgment in favor of Village Green, reasoning:

Based on the evidence provided to the Court and testimony of the parties, the Court finds that Marilyn Holsopple is properly before the Court as Power of Attorney for Marceil Johnston. Marceil was a patient/resident at Village Green initially in a skilled nursing bed then moved to assisted living. Plaintiff agreed to the private pay requirement of the move to assisted living at the rate of $168.00, and [was] notified that the bed that Marceil was moved to would not be covered by Medicare. All invoices were paid in full by Plaintiff to Defendant. Plaintiff brings this lawsuit for her money back alleging Defendant failed to bill Medicare properly for the assisted living bed and Plaintiff was wrongly charged.

The Court finds that the notification of the move to assisted living was proper and that the agreement to private pay the daily rate of $168.00 is

enforceable. Defendant cannot change the status of Marceil's stay to something covered by insurance when all parties were aware of the private pay status at the time of transition.

Therefore, the Court finds that Plaintiff failed to meet her burden of proof by the preponderance of the evidence that monies are due from Defendant. * * *

March 15, 2023 Judgment Entry at 1.

{¶ 11} On April 18, 2023, we issued a show-cause order questioning whether the present appeal should be dismissed on the basis that it had been filed by Holsopple, a non-lawyer, on behalf of her mother. Holsopple responded by arguing that she was proceeding pro se despite her reference to acting as power of attorney.

{¶ 12} Having reviewed the record, we note that Holsopple signed the private-pay agreement in her own capacity, obligating herself to pay for her mother's stay at Village Green. Holsopple subsequently paid the bill with a check drawn on a joint checking account she shared with her mother. Under these circumstances, we are persuaded that Holsopple in fact is acting pro se on appeal and asserting a personal right to reimbursement from Village Green. Finding our show-cause order satisfied, we will proceed to the merits of the appeal.

{¶ 13} Holsopple's assignment of error reads as follows:

A. The trial court erred in the Final Appealable Order-Small Claim Entry for the following statements:

1. "Plaintiff agreed to the private pay requirement of the move to assisted living at the rate of $168.00, and [was] notified that the bed that Marceil was

moved to would not be covered by Medicare."

2. "Plaintiff brings this lawsuit for her money back alleging Defendant failed to bill Medicare properly for the assisted living bed and Plaintiff was wrongly charged."

{¶ 14} After setting forth her assignment of error, Holsopple identifies the following two issues for our review:

A. Did the trial court err in allowing Appellee to misrepresent the healthcare service they explained to the Appellant and to allow Appellee to fraudulently bill for a healthcare service while holding no Ohio-mandated license for said service?

B. Did the trial court err in allowing Appellee to commit elder abuse when the healthcare staff secretly secured the signature of Marceil Johnston while under the total, dominant care and incompetent of understanding the document contents?

{¶ 15} The essence of Holsopple's appellate argument appears to be (1) that Village Green fraudulently represented that Johnston would be transferred to a short-term rehabilitation facility (for which Village Green had no license) and (2) that Village Green covertly obtained a signature from Johnston, who lacked the capacity to sign anything. Under these circumstances, Holsopple contends she is entitled to recover the money she paid Village Green under the terms of the private-pay agreement she signed.

{¶ 16} Having examined the record, we find Holsopple's argument to be unpersuasive. "The standard of review for a civil bench trial is whether the judgment of

the court was against the manifest weight of the evidence." *Peterson v. Booth*, 2023-Ohio-1301, 213 N.E.3d 251, ¶ 12 (2d Dist.). Under this standard, we may not substitute our judgment for the trial court's judgment. Our task is to "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and then determine whether the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered." (Citation omitted.) *Id.* We are guided by a presumption that the trial court's factual findings were correct, but we review the trial court's application of the law de novo. *Id.* at ¶ 13.

{¶ 17} Here the record reflects that Holsopple signed a private-pay agreement obligating herself to pay the disputed bill. The record also contains a "Notice of Medicare Non-Coverage" signed by Johnston. Holsopple did not establish that Johnston was incompetent to sign the document or that Village Green did anything nefarious to obtain her signature. In any event, Huffaker testified that Holsopple herself had been made aware of Medicare's non-coverage before she signed the private-pay agreement.

{¶ 18} As for Holsopple's argument about Village Green being unlicensed and engaging in fraud, the trial court was entitled to credit Huffaker's testimony and supporting documentation, which explained the situation. In particular, the record supported a finding that Village Green offered rehabilitation services through its skilled-care facility, which was licensed to provide such care and which was eligible for Medicare coverage. Indeed, Johnston stayed in the skilled-care facility for a period of time, and Medicare did pay the bill. The record further supported a finding that Johnston was transferred to a non-Medicare-eligible assisted-living facility for which Village Green was residentially

licensed. Holsopple paid for this portion of Johnston's stay pursuant to the parties' private-pay agreement. Contrary to Holsopple's argument, the record did not support a finding that Village Green had engaged in any fraudulent behavior, performed any act without a valid license, or represented that it would perform any act for which it was not licensed.

### III. Conclusion

{¶ 19} Holsopple's assignment of error is overruled, and the judgment of the Darke County Municipal Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.